REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  JULIAN ANDRE (SBN 251120)
   jandre@mwe.com
2  MCDERMOTT WILL & EMERY LLP
   2049 Century Park East, Suite 3200
3  Los Angeles, CA 90067-3206
   Telephone: (310) 277-4110
4  Facsimile: (310) 277-4730

5
   JOSEPH B. EVANS (appearing *pro hac vice*)
6  jbevans@mwe.com
   TODD HARRISON (appearing *pro hac vice*)
7  tdharrison@mwe.com
   MCDERMOTT WILL & EMERY LLP
8  One Vanderbilt Ave
   New York, NY 10017
9  Telephone: (212) 547-5767
   Facsimile: (212) 547-5444
10
11 Attorneys for Plaintiff
   Taylor Thomson

12            **UNITED STATES DISTRICT COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

14                  **WESTERN DIVISION**

15 | Taylor Thomson | Case No. 2:23-cv-04669-MEMF-MAR |
16 |         Plaintiff, | |
17 | v. | **PLAINTIFF TAYLOR THOMSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS PERSISTENCE TECHNOLOGIES (BVI) PTE LTD. AND TUSHAR AGGARWAL'S MOTION TO DISMISS** |
18 | Persistence Technologies BVI Pte Ltd., Tushar Aggarwal, Ashley Richardson, | |
19 |         Defendants. | |
20 | | |
21 | | The Honorable Maame Ewusi-Mensah Frimpong, United States District Judge |
22 | | |
23 | | Motion to Dismiss Filed: October 10, 2023 |
24 | | Hearing Date and Time: March 21, 2024 at 10:00 am |
25 | | |
26 | | Courtroom: 8B |
27
28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ...............................................................................................................................3

I.     MS. THOMSON'S CLAIMS ARE PROPERLY BEFORE THIS COURT AND SHOULD NOT BE DISMISSED IN FAVOR OF ARBITRATION ...................................................3

    A.     Aggarwal is Not a Party to the TSA or Any Other Agreement Containing an Arbitration Clause ...................................................3

    B.     The TSA's Arbitration Clause Does Not Cover Non-TSA Purchases ...................4

II.    JURISDICTION IN CALIFORNIA IS APPROPRIATE...................................................5

    A.     Applicable Law.....................................................................................................5

    B.     The Moving Defendants Purposely Directed Their Efforts at California ..............................................................................................6

    C.     The Claims Arise From the Moving Defendants' California-Directed Efforts ...............................................................................................................11

III.   THE COMPLAINT STATES A FEDERAL SECURITIES CLAIM ...............................13

    A.     The Complaint Falls Well Within the Territorial Reach of the Federal Securities Laws..................................................................................................13

    B.     The Complaint Adequately Alleges the Moving Defendants' Material Misrepresentations and Omissions .....................................................................15

        1.     The Moving Defendants Concealed Richardson's Kickback ...................16

        2.     The Moving Defendants Induced Ms. Thomson with False Statements About XPRT's Performance ....................................................17

    C.     The Complaint Adequately Alleges a Strong Inference of Scienter.....................18

    D.     The Complaint Adequately Pleads Reliance.........................................................19

    E.     The Complaint Adequately Pleads Loss Causation ..............................................20

IV.    MS. THOMSON'S STATE LAW CLAIMS ARE ADEQUATELY ALLEGED ...........21

    A.     Ms. Thomson's State Law Claims Are Not Extraterritorial .................................21

    B.     Ms. Thomson's Registration Claim is Timely......................................................22

    C.     The Remaining State Law Claims are Properly Pled............................................23

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

V.     MS. THOMSON SHOULD BE GRANTED LEAVE TO AMEND ................................24

CONCLUSION..........................................................................................................................25

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   6677 F.3d 60 (2d Cir. 2012)..................................................................................14

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
   666 F. Supp. 2d 1109 (C.D. Cal. 2009) .................................................................10

*Am. Career Coll., Inc. v. Medina*,
   2021 WL 5263866 (C.D. Cal. Apr. 15, 2021) ...................................................11, 13

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ................................................................................6

*In re Apple Inc. Sec. Litig.*,
   2020 WL 2857397 (N.D. Cal. June 2, 2020) ........................................................17

*Asad v. Pioneer Balloon*,
   10 F. App'x 624 (9th Cir. 2001) ........................................................................9, 11

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
   11 F.4th 972 (9th Cir. 2021) ...................................................................................6

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ...........................................................................11, 12

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) ......................................................................15, 16, 20

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
   534 F. Supp. 3d 326 (S.D.N.Y. 2021)................................................................22, 23

*Bos. Telecomms. Grp., Inc. v. Deloitte Touche Tohmatsu*,
   278 F. Supp. 2d 1041 (N.D. Cal. 2003) ..................................................................5

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..............................................................................................12

*In re Bristol Myers Squibb Co. Sec. Litig.*,
   586 F. Supp. 2d 148 (S.D.N.Y. 2008)...................................................................19

*Brown v. China Integrated Energy, Inc.*,
   875 F. Supp. 2d 1096 (C.D. Cal. 2012) .................................................................19

*City of Almaty v. Khrapunov*,
   685 F. App'x 634 (9th Cir. 2017) ..........................................................................12

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) ................................................................14

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ............................................................12

*Corwin v. Swanson*,
    2010 WL 11598013 (C.D. Cal. Apr. 27, 2010) ....................................11

*Cybersell, Inc. v. Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997) ..............................................................10

*Desai v. Deutsche Bank Sec. Ltd.*,
    573 F.3d 931 (9th Cir. 2009) ..............................................................19

*DMS Servs., Inc. v. Superior Court*,
    140 Cal. Rptr. 3d 896 (Cal. Ct. App. 2012) ..........................................3

*Drendel v. Bank of Am., N.A.*,
    2023 WL 5504987 (C.D. Cal. July 3, 2023) (Frimpong, J.) ................24

*ESG Capital Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ......................................................19, 20

*Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*,
    828 F.2d 1439 (9th Cir. 1987) ............................................................12

*In re Gilead Sciences Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................20

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
    972 F.3d 1101 (9th Cir. 2020) ..............................................5, 6, 7, 11

*Goldman, Sachs & Co. v. City of Reno*,
    747 F.3d 733 (9th Cir. 2014) ................................................................5

*Gray v. SEIU*,
    2020 WL 12228937 (N.D. Cal. Aug. 5, 2020) ......................................5

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ..............................................................6

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
    72 F.4th 1085 (9th Cir. 2023) ............................................................10

*Imageline, Inc. v. Mintskovsky*,
    2009 WL 10672787 (C.D. Cal. June 16, 2009) ..................................10

iv

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*j2 Glob. Commc'ns, Inc. v. Vitelity Commc'ns, LLC,*
    2012 WL 1229851 (C.D. Cal. Apr. 12, 2012) ...................................................13

*Johnson v. Walmart Inc.,*
    57 F.4th 677 (9th Cir. 2023) ................................................................3, 4, 5

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988 (9th Cir. 2018) ....................................................13, 15, 18

*Koehler v. Pulvers,*
    614 F. Supp. 829 (S.D. Cal. 1985) ...........................................................22

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,*
    416 F.3d 940 (9th Cir. 2005) ....................................................................18

*Loe v. Miller Min. Co.,*
    1989 WL 79837 (9th Cir. 1989) ...............................................................22

*Matrixx Initiatives, Inc. v. Siracusano,*
    563 U.S. 27 (2011) .....................................................................................15

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
    647 F.3d 1218 (9th Cir. 2011) ..................................................................11

*Mehr v. Féd'n Internationale de Football Ass'n,*
    115 F. Supp. 3d 1035 (N.D. Cal. 2015) .....................................................7

*Melvin v. Brayshaw,*
    2019 WL 6482220 (C.D. Cal. Oct. 3, 2019) .............................................14

*Morrison v. National Australia Bank Ltd.,*
    561 U.S. 247 (2010) .......................................................................13, 14, 15

*Pebble Beach Co. v. Caddy,*
    453 F.3d 1151 (9th Cir. 2006) ..................................................................11

*In re Quality Sys., Inc. Sec. Litig.,*
    865 F.3d 1130 (9th Cir. 2017) ............................................................16, 17

*Ravelo Monegro v. Rosa,*
    211 F.3d 509 (9th Cir. 2000) ....................................................................12

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.,*
    845 F.3d 1268 (9th Cir. 2017) ..................................................................17

*Rosenthal v. Wells Fargo Bank, N.A.,*
    771 F. App'x 390 (9th Cir. 2019) ..............................................................21

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Salameh v. Tarsadia Hotels*,
   2010 WL 2839013 (S.D. Cal. July 20, 2010) ...............................................22

*In re Sanofi Sec. Litig.*,
   155 F. Supp. 3d 386 (S.D.N.Y. 2016)...........................................................21

*Satey v. JPMorgan Chase & Co.*,
   521 F.3d 1087 (9th Cir. 2008) ......................................................................21

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ....................................................................6, 11

*Sec. Alarm Fin. Enters., L.P. v. Nebel*,
   200 F. Supp. 3d 976 (N.D. Cal. 2016) ..........................................................11

*Sec. Inv'r Prot. Corp. v. Vigman*,
   764 F.2d 1309 (9th Cir. 1985) .........................................................................5

*SEC v. Geranio*,
   2013 WL 12146516 (C.D. Cal. Jan. 29, 2013) ........................................14, 15

*SEC v. Ripple Labs, Inc.*,
   2022 WL 762966 (S.D.N.Y. Mar. 11, 2022) .................................................15

*Shawarma Stackz LLC v. Jwad*,
   2021 WL 5827066 (S.D. Cal. Dec. 8, 2021)....................................................7

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990) .........................................................................6

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ......................................................................4, 5

*South Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ........................................................................19

*Sovany Beverages Co. v. Newport Falvors & Fragrances*,
   2022 WL 21828627 (C.D. Cal. Aug. 15, 2022) (Frimpong, J.)......................24

*Stoyas v. Toshiba Corp.*,
   896 F.3d 933 (9th Cir. 2018) ........................................................................14

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
   250 F.3d 87 (2d. Cir. 2001)...........................................................................21

*Szulik v. Tagliaferri*,
   966 F. Supp. 2d 339 (S.D.N.Y. 2013)...........................................................21

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................13, 18, 19

*In re Tezos Sec. Litig.*,
   2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) .................................7, 15

*U.S. v. Shields*,
   844 F.3d 819 (9th Cir. 2016) .................................................................17

*U.S. v. Webb*,
   655 F.2d 977 (9th Cir. 1981) .................................................................24

*Unic Oil Compania v. Internacional De Granos E Insumos S.A. De C.V.*,
   1996 WL 429172 (9th Cir. 1996) ............................................................9

*Veribi, LLC v. Compass Mining, Inc.*,
   2023 WL 3555471 (C.D. Cal. Apr. 20, 2023) (Frimpong, J.) ............24

*Veribi, LLC v. Compass Mining, Inc.*,
   2023 WL 375680 (C.D. Cal. Jan. 20, 2023) (Frimpong, J.) .................4

*Zakinov v. Ripple Labs, Inc.*,
   2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ..............................21, 22

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
   952 F. Supp. 1119 (W.D. Pa. 1997)......................................................10

**Statutes, Rules, and Other Authorities**

Cal. Corp. Code § 25501........................................................................22

Cal. Corp. Code § 25503...............................................................22, 23

Cal. Corp. Code § 25507........................................................................22

Circle Blog, https://www.circle.com/blog/us-crypto-policy-needs-to-change ...............................8

Ecosystem Explained, Ledger Academy (Dec. 5, 2023)
   https://www.ledger.com/academy/ledger-nano-the-safest-way-to-manage-crypto .............7, 8

Federal Arbitration Act,
   9 U.S.C. § 2.............................................................................................3

Fed. R. Civ. P. 9......................................................................................13

Fed. R. Civ. P. 12.............................................................................13, 20

Fed. R. Civ. P. 15....................................................................................24

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Private Securities Litigation Reform Act of 1995,
    15 U.S.C. § 78u-4 ............................................................................................13

Section 10(b) of the Securities Exchange Act of 1934,
    15 U.S.C. § 78j(b) ..................................................................................... *passim*

Section 21 of the Securities Exchange Act of 1934,
    15 U.S.C. § 78aa ................................................................................................5

SEC Rule 10b-5,
    17 C.F.R. § 240.10b-5 ...............................................................................3, 13, 14

https://twitter.com/PersistenceOne/status/1411776819372597248 ................................9

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Plaintiff Taylor Thomson respectfully submits this Memorandum of Points and Authorities in Opposition to Defendants Persistence Technologies (BVI) PTE Ltd. and Tushar Aggarwal's Motion to Dismiss the First Amended Complaint (ECF No. 34).[1]

**PRELIMINARY STATEMENT**

Defendants Persistence Technologies (BVI) PTE Ltd. ("Persistence"), Tushar Aggarwal ("Aggarwal," together, the "Moving Defendants"), and Ashley Richardson ("Richardson") conspired to make a series of false statements and material omissions to induce Ms. Thomson to invest over 40 million dollars of Bitcoin into the near-worthless cryptocurrency XPRT. The Moving Defendants and Richardson induced Ms. Thomson with false statements about XPRT's performance, including by overstating historical and prospective annual percentage yield ("APY") and annual percentage rates ("APR"). Relying on the Moving Defendants and Richardson's misrepresentations and omissions, Ms. Thomson ultimately made two separate sets of purchases of XPRT: (1) a series of purchases spelled out in Ms. Thomson's August 25, 2021 Token Sale Agreement with Persistence (the "TSA"), totaling 4 million XPRT (worth approximately $21,350,765); and (2) a series of purchases which were executed between October 2021 and June 2022, *outside of the TSA*, for a total value of $24,731,599 (the "Non-TSA Purchases"). The claims asserted in this action concern the Non-TSA Purchases only.

The Moving Defendants and Richardson agreed that the Moving Defendants would pay a kickback to Richardson to secure Ms. Thomson's investment and explicitly agreed to hide the kickback from Ms. Thomson, including by purposely omitting any reference to it from the TSA. Richardson also told Ms. Thomson directly, both orally and in writing, that she was not being paid at all for managing and investing Ms. Thomson's cryptocurrency. After Ms. Thomson made her initial purchases, Aggarwal and Persistence secretly paid Richardson a kickback of 97,166 XPRT (worth approximately $783,702 at the time). In their Motion, the Moving Defendants advance a

---

[1] Ms. Thomson's First Amended Complaint (ECF No. 25) is referred to throughout as the "Complaint" and cited as "¶ __." The Declaration of Bradley Dizik (ECF No. 25-1), which was submitted in support of Ms. Thomson's Complaint and incorporated by reference throughout the Complaint (¶ 8 n.2), is referred to herein as the "Dizik Declaration" and cited as "Dizik Decl." Defendants Persistence Technologies (BVI) PTE Ltd. and Tushar Aggarwal's Memorandum of Points and Authorities in Support of their Motion to Dismiss the First Amended Complaint (ECF No. 33-1) is referred to throughout as the "Motion" or "MTD."

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

series of meritless technical and jurisdictional arguments. Each of those arguments fail for the reasons set forth below.

**First,** the Moving Defendants neglect to mention that Aggarwal is not a party to the TSA or any other written agreement with Ms. Thomson, and any claims against him are plainly not covered by the TSA's arbitration provision.

**Second**, the Moving Defendants seek to improperly expand the scope of the TSA's arbitration clause to cover the Non-TSA Purchases. But the TSA only covers the distinct set of purchases of 4 million XPRT that are explicitly set forth in Schedule 1 of the TSA. The Non-TSA Purchases are not referenced, incorporated, or covered by any provision in the TSA. Notably, neither Persistence nor Aggarwal has agreed to accept jurisdiction of Ms. Thomson's non-TSA claims anywhere—not in this Court or in the Singapore arbitration. The Non-TSA Purchases are not governed by the TSA or any other written agreement containing an arbitration clause. (*See* Section I.)

**Third**, the Moving Defendants availed themselves of California by soliciting Ms. Thomson's investment, paying kickbacks to Richardson while she was in California, and causing investments by Ms. Thomson into XPRT which were exclusively stored in physical hardware devices located in California. The Moving Defendants also marketed to California by offering the purchase of XPRT on Persistence's website and providing links to exchanges that would enable customers in the U.S. and California to purchase XPRT. These efforts resulted in Ms. Thomson's Non-TSA Purchases, which Richardson executed for Ms. Thomson while physically present in California. Every XPRT purchased under the Non-TSA Purchases came through the hardware devices physically located in California and were exclusively under Richardson's control while she was in California. (*See* Section II.)

**Fourth**, the fact that the Moving Defendants specifically chose *not* to geo-fence or prevent U.S. and California residents from accessing the contents of Persistence's website and making purchases of XPRT (as other cryptocurrency exchanges have done) demonstrates that their advertising and solicitation efforts in the U.S. and California were purposeful and intentional. Indeed, the Moving Defendants only attempted to establish such parameters after being confronted

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

by Ms. Thomson pursuit to this lawsuit. (*See id.*)

*Fifth*, despite the Moving Defendants' assertions to the contrary, Ms. Thomson has adequately stated a claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5 (Count III). Ms. Thomson has alleged particularized facts showing that the Moving Defendants knowingly concealed Richardson's kickback and misrepresented XPRT's performance, causing Ms. Thomson to enter into her domestic, Non-TSA Purchases and lose $24,731,599. (*See* Section III.) For similar reasons, Ms. Thomson has adequately pled her remaining state law claims. (*See* Section IV.) Consequently, the Motion should be denied in its entirety.[2]

## ARGUMENT

## I.    MS. THOMSON'S CLAIMS ARE PROPERLY BEFORE THIS COURT AND SHOULD NOT BE DISMISSED IN FAVOR OF ARBITRATION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, "limits the role of the judiciary to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (citation and internal quotation marks omitted). While the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution," "it does not require parties to arbitrate when they have not agreed to do so . . . ." *Id.* at 681 (citations and internal quotation marks omitted).

### A.    Aggarwal is Not a Party to the TSA or Any Other Agreement Containing an Arbitration Clause

Aggarwal is not a party to the TSA. (*See* MTD at Ex. 1.) Under controlling law, arbitration provisions cannot bind non-parties, even if they are affiliated with companies that executed a contract with an arbitration provision. *See, e.g.*, *DMS Servs., Inc. v. Superior Court*, 140 Cal. Rptr. 3d 896, 901-05 (Cal. Ct. App. 2012) (holding that non-signatory could not compel arbitration under

---

[2] At the very least, if the Court is inclined to dismiss any portion of the Complaint, the Court should afford Ms. Thomson an opportunity to either conduct jurisdictional discovery or amend her pleading. As evidenced by Exhibit 1 to the accompanying Declaration of Julian L. André ("André Decl."), Ms. Thomson has recently uncovered secret messages exchanged between Aggarwal and Richardson (while Richardson was located in California) in which the two explicitly discussed concealing the kickback from Ms. Thomson. At a minimum, Ms. Thomson should be permitted to conduct jurisdictional discovery or granted leave to amend her Complaint so that the Court can consider these messages and other information in assessing Ms. Thomson's claims. (*See* Section V.)

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  agreement between insurance carrier and employer). Accordingly, as Aggarwal has not cited any

2  arbitration agreements between him and Ms. Thomson, the claims against Aggarwal cannot be

3  dismissed in favor of arbitration.

**B.    The TSA's Arbitration Clause Does Not Cover Non-TSA Purchases**

5      The TSA explicitly confines its scope by including Schedule 1 and detailing exactly which

6  transactions it covers—the 4 million XPRT, and including all particulars of the transaction. (*See,*

7  *e.g.*, ¶¶ 1 n.1, 153, 166, 186; André Decl. Ex. 2 at § 1.1 █████████████████████

8  ████████████████████; André Decl. Ex. 2 at Schedule 1 ████████████████

9  ██████████████ The Non-TSA Purchases were separately negotiated, at different prices and at

10  different times, and the parties purposely chose not to record those separate purchases in written

11  agreements, as they had with the first set of purchases under the TSA. (*See, e.g.*, ¶¶ 168-69.) Courts

12  routinely reject attempts to invoke arbitration clauses in other agreements between the parties

13  governing separate transactions. *See, e.g.*, *Johnson*, 57 F.4th at 683 ("The two contracts—though

14  they involve the same parties and the same tires—are separate and not interrelated. Therefore, the

15  arbitration agreement in the first does not encompass disputes arising from the second."); *Veribi,*

16  *LLC v. Compass Mining, Inc.*, 2023 WL 375680, at *9-11 (C.D. Cal. Jan. 20, 2023) (Frimpong, J.)

17  (holding that an agreement executed for one transaction did not govern the entirety of the parties'

18  hosting relationship or mandate arbitration with respect to the parties' other transactions, in part

19  because of a merger clause in the relevant agreement which stated that the agreement was the entire

20  agreement between the parties "with respect to the subject matter of this Agreement."). ███████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████ (André Decl. Ex. 2 at § 7.4.)

24      Unlike the authorities cited by the Moving Defendants (*see* MTD at 7-8), the TSA contains

25  no language to suggest that it covers Non-TSA Purchases. The Moving Defendants' authorities are

26  completely inapposite as they involved situations where the claims explicitly fell within the scope

27  of the applicable arbitration provision or could only be resolved by interpreting the agreement

28  containing the arbitration provision. *See, e.g.*, *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 722 (9th

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Cir. 1999) (plaintiff's antitrust claims fell within scope of arbitration clause in parties' agreement where "resolution" of the claims "necessitate[d] interpretating [the agreement] to determine its meaning" and ascertain merits of plaintiff's claims); *Bos. Telecomms. Grp., Inc. v. Deloitte Touche Tohmatsu*, 278 F. Supp. 2d 1041, 1044-47 (N.D. Cal. 2003) (parties' agreement required arbitration of all disputes "with respect to the conduct of the Partnership business" and "[p]laintiffs' claims f[e]ll squarely within [the agreement's] definition of partnership business . . . ."). Neither situation is present here.

While the Moving Defendants repeatedly mention that Ms. Thomson initiated an arbitration, that proceeding is irrelevant because it only covers TSA purchases and not claims arising from the Non-TSA Purchases pursued in this case.[3] The Moving Defendants themselves have refused to take the position that they are advocating for this Court to adopt—namely, that all of Ms. Thomson's purchases and claims fall under the TSA. (*See* MTD at 9.)[4]

## II.      JURISDICTION IN CALIFORNIA IS APPROPRIATE

### A.      Applicable Law

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, confers personal jurisdiction over foreign defendants—like the Moving Defendants—if they have the requisite minimum contacts with the U.S. *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315-16 (9th Cir. 1985). Courts in the Ninth Circuit apply a three-part test to determine whether minimum contacts exist and, therefore, whether specific jurisdiction can be exercised over a foreign defendant: (1) the foreign defendant must "purposefully direct" its activities toward the forum or "purposefully avail[] [itself] of the privilege of conducting activities in the forum"; (2) the claims at issue "must arise out of or relate to the defendant's forum-related activities"; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice, i.e. it "must be reasonable." *Glob.*

---

[3] The Moving Defendants' assertion that interpretation of the TSA is governed by Singapore law completely misses the point. (*See* MTD at 8 n.5.) Where, as here, "the existence of an arbitration agreement is at issue and . . . the presumption in favor of arbitrability does not apply," courts "'use general state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate exists.'" *See, e.g.*, *Johnson*, 57 F.4th at 681-82 (quoting *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014)).

[4] This Court should also refuse to stay the instant proceedings to the extent that it finds that "any claim or party . . . fall[s] outside the scope of the [TSA's] arbitration provision . . . ." (*See* MTD at 9.) Aside from making generalized assertions about the "substantial overlap of facts underlying all claims" (*see id.*), the Moving Defendants fail to explain how considerations of economy, efficiency, and prejudice counsel in favor of a stay. Absent such a showing, a stay would be inappropriate. *Gray v. SEIU*, 2020 WL 12228937, at *5–6 (N.D. Cal. Aug. 5, 2020).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  *Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir.

2  2020) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The

3  plaintiff bears the burden of satisfying the first two prongs of this test, but if the plaintiff can establish

4  the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the

5  exercise of jurisdiction would not be reasonable." *Glob. Commodities*, 972 F.3d at 1107 (quoting

6  *Schwarzenegger*, 374 F.3d at 802).

7          "[T]he plaintiff need only make a prima facie showing of jurisdiction" to defeat a motion to

8  dismiss. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir.

9  2003). The plaintiff's "version of the facts is taken as true," and any "conflicts between the facts

10 contained in the parties' affidavits must be resolved in [the plaintiff's] favor . . . ." *See Harris*, 328

11 F.3d at 1129 (citations omitted).

12          **B.**     **The Moving Defendants Purposely Directed Their Efforts at California**

13          Under the first prong of the specific jurisdiction test, a defendant purposefully directs its

14 activities toward the forum when it has "(1) committed an intentional act, (2) expressly aimed at the

15 forum state, (3) causing harm that [it] knows is likely to be suffered in the forum state." *See Ayla,*

16 *LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (quoting *Axiom Foods, Inc. v. Acerchem*

17 *Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017)). Purposeful availment "is met if the defendant

18 'performed some type of affirmative conduct which allows or promotes the transaction of business

19 within the forum state.'" *See Harris*, 328 F.3d at 1130 (quoting *Sher v. Johnson*, 911 F.2d 1357,

20 1362 (9th Cir. 1990)).

21          ***First***, the Moving Defendants caused false representations to be made to Ms. Thomson

22 through their agent, Richardson, and induced Ms. Thomson's Non-TSA Purchases, all while

23 knowing that Richardson was physically located in California. (¶¶ 20, 187-88.) Throughout their

24 inducement of Ms. Thomson, the Moving Defendants not only communicated regularly with

25 Richardson, but they knowingly relayed falsehoods about XPRT to Richardson, knowing that

26 Richardson would feed that misleading information to Ms. Thomson. (¶¶ 101-02, 103(f), 115-19,

27 187-88.) Richardson communicated these misstatements and falsely denied the existence of the

28 kickbacks she was receiving from Persistence while she was physically located in California. (¶¶

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

112, 115-19, 187-88.) Ms. Thomson was also physically located in California for many of her conversations with Richardson. (¶ 6.) These allegations are sufficient to establish specific jurisdiction over the Moving Defendants. *See, e.g.*, *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *6 (N.D. Cal. Aug. 7, 2018) (plaintiff made a prima facie personal jurisdiction showing against a foreign foundation, given that the foundation maintained an agent in the U.S. and two California based residents served as the foundation's "de facto U.S. marketing arm").

The Moving Defendants claim that Richardson's conduct and location in California cannot "confer jurisdiction over [them]" because Richardson was actually "[Ms. Thomson's] agent." (*See* MTD at 11-12.) That assertion, however, squarely contradicts the Complaint's detailed allegations, which establish that Richardson served as the Moving Defendants' agent, funneled misrepresentations to Ms. Thomson in conjunction with the Moving Defendants, and received a kickback from the Moving Defendants in exchange for securing Ms. Thomson's Non-TSA Purchases, all of which she did while in California. (*See* ¶¶ 5, 21, 115-19, 137, 187-88.) Such allegations must be accepted as true for the purposes of this Motion and easily establish personal jurisdiction over the Moving Defendants. *See Shawarma Stackz LLC v. Jwad*, 2021 WL 5827066, at *7-8 (S.D. Cal. Dec. 8, 2021) (concluding that an agent's contacts and actions could be imputed to the principal for purposes of establishing personal jurisdiction over the principal); *see also Glob. Commodities*, 972 F.3d at 1108 ("Interpreting genuine factual disputes in [plaintiff's] favor—as we must in this posture—we conclude that [plaintiff] had made a prima facie showing [of jurisdiction].").

The Moving Defendants' reliance on *Mehr v. Féd'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1050 (N.D. Cal. 2015) is misplaced. In *Mehr*, the plaintiffs' allegations regarding the defendant organization's agents were insufficient to establish purposeful availment because the agents were not compensated by the defendant. *Id.* at 1050-51. Here, by contrast, the Complaint alleges that Richardson was secretly compensated by the Moving Defendants for her efforts to secure Ms. Thomson's Non-TSA Purchases. (¶¶ 1-2, 21, 26, 74-75, 97, 109-11, 174-78.) As a result, the Complaint has adequately alleged that the Moving Defendants purposefully availed themselves of the privileges of U.S. and California law and/or directed their activities toward the forum.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    But there is more.

2    **Second**, Ms. Thomson's XPRT was stored on hardware devices called "Ledgers," located in

3    Los Angeles, California. (*See* Dizik Decl. ¶ 9-10, 16.) To use a Ledger, a user must have physical

4    possession of the Ledger because "every single wallet interaction needs to be confirmed on the

5    device itself. As a result, nobody can remotely interact with [a user's] crypto." *See* Ledger, *What is*

6    *Ledger? The Ledger Ecosystem Explained*, Ledger Academy (Dec. 5, 2023)

7    https://www.ledger.com/academy/ledger-nano-the-safest-way-to-manage-crypto. Ledgers hold

8    private keys offline in a secure manner and must be plugged into a device to execute transactions

9    and stake assets. *Id.* In other words, the only way to accept, transact, trade, or transfer the XPRT

10    received in connection with the Non-TSA Purchases is by a person who is physically located in

11    California to manipulate the Ledger. In this case, the Ledgers were all stored in Richardson's home

12    in California. (Dizik Decl. ¶ 9, 16.) In short, the Non-TSA Purchases could not have occurred

13    anywhere but California and jurisdiction over those claims is only appropriate here.

14    **Third**, had the Moving Defendants wished to geo-fence or prevent U.S. and California

15    residents from accessing the contents of Persistence's website, they could have easily done so.

16    Cryptocurrency platforms regularly geo-fence assets in order to prevent customers in the U.S. from

17    purchasing those assets. *See, e.g.*, Circle, US crypto policy needs to change, Circle Blog,

18    https://www.circle.com/blog/us-crypto-policy-needs-to-change. The fact that the Moving

19    Defendants chose not to establish such parameters demonstrates that their advertising and

20    solicitation efforts in the U.S. and California were purposeful and intentional. Indeed, in a tacit

21    admission that their website was doing exactly what Ms. Thomson has alleged, and after being

22    confronted by Ms. Thomson about their misconduct, the Moving Defendants recently attempted to

23    remove the digital footprint of their activities from the internet, deleting tweets advertising XPRT

24    and removing the offer to sell XPRT from Persistence's website. (¶¶ 52, 237-41.) That the Moving

25    Defendants have gone to such lengths to alter the contents of Persistence's website and scrub

26    evidence of their activities from the internet is telling. Given the Moving Defendants' behavior,

27    further discovery about the Moving Defendants' activities will almost certainly yield more relevant

28    evidence.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Fourth*, the Moving Defendants marketed XPRT extensively to investors in the U.S. (particularly California) through social media, speaking engagements, and Persistence's website. (¶¶ 5-6, 19, 45-59, 63.) In online articles, the Moving Defendants made clear that Persistence's validator nodes were "distributed globally" and that XPRT was "designed to stimulate global liquidity." (¶¶ 38 n.6, 40 n.7.) Similarly, in a July 4, 2021 tweet, Persistence wished its "community members from the US a very happy #4thofJuly" and urged them to "take a little break from participating in @pStakeFinance's Staking Gala in order to spend some time with friends and family." *See* @pStakeFinance, Twitter (July 4, 2021, 3:59 PM), https://twitter.com/PersistenceOne/status/1411776819372597248. [5] The Moving Defendants also knowingly solicited Ms. Thomson's Non-TSA Purchases of XPRT through Richardson while Richardson and Ms. Thomson were physically located in California. (¶¶ 6, 20.) While Richardson was in California, Richardson placed numerous calls and sent countless text messages and emails to Ms. Thomson to promote XPRT. (¶¶ 6, 20.) The Moving Defendants knew that these sales and marketing efforts were occurring while Richardson and Ms. Thomson were in California. (¶ 6.) Furthermore, Richardson executed all of the Non-TSA Purchases in Ms. Thomson's digital wallets while physically present in California. (¶¶ 169-70.)[6]

Where, as here, non-resident defendants market and solicit business in the forum state and those activities result in the transaction of business, the defendants have purposefully availed themselves of the forum state. *See, e.g.*, *Asad v. Pioneer Balloon*, 10 F. App'x 624, 626-27 (9th Cir. 2001) ("Soliciting business in the forum state will generally suffice if it results in contract negotiations or the transaction of business."); *Unic Oil Compania v. Internacional De Granos E Insumos S.A. De C.V.*, 1996 WL 429172, at *4 (9th Cir. 1996) (asserting jurisdiction over a non-resident defendant who was involved in "extensive solicitation of business"). To counter the

---

[5] The Court may take judicial notice of this tweet "because, as a public social media post, it is 'not subject to reasonable dispute [and] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (*See* MTD at 18 n.14 (quoting Fed. R. Evid. 201(b)(2)).)

[6] One of Ms. Thomson's Non-TSA Purchases even took place while Ms. Thomson *was in* California. (¶ 169.) The Moving Defendants maintain that Ms. Thomson's location for this one purchase "is at most 'random' and 'fortuitous' and says nothing about [the Moving Defendants'] conduct toward the forum of California or the United States." (*See* MTD at 11 n.7.) The Complaint, however, is replete with allegations that Ms. Thomson's Non-TSA Purchases were fraudulently induced by the Moving Defendants' conduct toward the forum, including their active marketing and solicitation efforts and the misrepresentations they funneled to Ms. Thomson through Richardson while knowing that Richardson was present in California. (¶¶ 6. 20.)

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    Complaint's detailed allegations about their marketing and solicitation efforts, the Moving

2    Defendants insist that "having a freely accessible website or social media is not enough to subject a

3    foreign defendant" to jurisdiction. (*See* MTD at 11.) That argument, however, overlooks prevailing

4    law, the interactive nature of Persistence's website, and the Moving Defendants' targeting of the

5    forum and Ms. Thomson. The Ninth Circuit has endorsed the "sliding scale" approach set forth in

6    *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) to determine

7    whether the operation of a website supports the exercise of personal jurisdiction. *See Cybersell, Inc.*

8    *v. Cybersell, Inc.*, 130 F.3d 414, 418-19 (9th Cir. 1997). Under the "sliding scale" approach, "the

9    likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the

10   nature and quality of commercial activity that an entity conducts over the internet." *See id.* at 419

11   (quoting *Zippo*, 952 F. Supp. at 1124). The higher the degree of website interactivity, the greater the

12   support for the exercise of specific jurisdiction. *See Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th

13   1085, 1092 n.3 (9th Cir. 2023).

14           Here, the Moving Defendants operated a website that specifically solicited business from

15   United States investors, including California residents, and enabled such investors to purchase

16   XPRT. Until very recently (June 2023), Persistence's website was available in California and had a

17   section dedicated to advising customers how to purchase XPRT and "Get Involved In the Persistence

18   Ecosystem. Powered by XPRT." (¶¶ 47-49, 51.) Persistence's website also provided "links to various

19   exchanges" and directed customers to "[a]cquire XPRT." (¶¶ 50-51.) As such, the Moving

20   Defendants' operation of Persistence's website, which was purposely targeted to and available for

21   purchases in the United States, supports a finding of personal jurisdiction. *See Allstar Mktg. Grp.,*

22   *LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1122 (C.D. Cal. 2009) (foreign defendant

23   company's officers purposefully availed themselves of benefits of doing business in forum "by

24   operating a highly commercial website through which regular sales of allegedly infringing products

25   [we]re made to customers in th[e] state"); *Imageline, Inc. v. Mintskovsky*, 2009 WL 10672787, at

26   *3-4 (C.D. Cal. June 16, 2009) (defendant company's operation of website satisfied purposeful

27   availment requirement given that the website allowed the consumer to purchase the company's

28   products online).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

The authorities cited by the Moving Defendants are inapposite, as those authorities involved passive websites and/or social media posts that neither facilitated transactions nor targeted the forum. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (website simply included "Pebble Beach" in its domain name and did not otherwise target the forum); *Sec. Alarm Fin. Enters., L.P. v. Nebel*, 200 F. Supp. 3d 976, 985-86 (N.D. Cal. 2016) (social media posts were insufficient to establish personal jurisdiction where the posts "merely provid[ed] information" and plaintiff "offered no evidence . . . that [the] . . . posts were in any way directed or targeted at California or a California audience."); *Corwin v. Swanson*, 2010 WL 11598013, at *3 (C.D. Cal. Apr. 27, 2010) (finding that defendants' allegedly false and misleading statements on the company's website and in public filings, without "something more," were insufficient to demonstrate purposeful availment).[7]

## C. The Claims Arise From the Moving Defendants' California-Directed Efforts

In addition, "the claim must arise out of or relate to the defendant's forum-related activities." *Glob. Commodities*, 972 F.3d at 1107 (quoting *Schwarzenegger*, 374 F. 3d at 802).[8] A claim arises out of a defendant's forum-related activities if the alleged injury would not have occurred "but for" the defendant's forum-related activities. *Ballard*, 65 F.3d at 1500. Ms. Thomson's Complaint makes clear that, "but for" the continued pressure and false statements promulgated by the Moving Defendants and Richardson, including those made in California, "Ms. Thomson would not have made [her] numerous [N]on-[TSA] [P]urchases of XPRT between October 2021 and June 2022" and suffered approximately $24,731,559 in damages. (¶¶ 4, 220.) In light of these allegations, the second prong of the specific jurisdiction test is easily satisfied. *See Asad*, 10 F. App'x at 626 (9th Cir. 2001) ("[B]ut for [defendant's] solicitations and the ensuing contract negotiations, [plaintiff] would not have suffered breach of contract damages.").

---

[7] *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, (9th Cir. 2011), which is tucked away in a footnote of the Moving Defendants' Motion (*see* MTD at 11 n.8), also fails to support the Moving Defendants' cause. *Mavrix*, 647 F.3d at 1229-1232 (defendant corporation's website was expressly aimed at California and supported a finding of specific jurisdiction).

[8] The Moving Defendants make no attempt to argue or dispute this prong of the specific jurisdiction inquiry and have, therefore, waived this issue. *Am. Career Coll., Inc. v. Medina*, 2021 WL 5263866, at *2 n.1 (C.D. Cal. Apr. 15, 2021); *see also Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) ("Given that [defendant] does not dispute [plaintiff's allegations under the second prong of the specific jurisdiction test], we conclude that [plaintiff] has carried her burden on the issue.").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

The Moving Defendants' non-specific argument that it would be "unfair and unreasonable" for this Court to exercise jurisdiction also misses the mark. (*See* MTD at 12-13.)[9] Because the first two requirements for specific jurisdiction are satisfied, there is a "strong presumption" that jurisdiction is reasonable, and the Moving Defendants have a "heavy burden" to rebut this presumption. *See Ballard*, 65 F.3d at 1500-02. To avoid jurisdiction, the Moving Defendants must "'present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" *See id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)) (emphasis in original). The Moving Defendants have not carried that burden here. Besides their conclusory assertion that "all" of the factors utilized by the Ninth Circuit to assess reasonableness "weigh against asserting jurisdiction here" (*see* MTD at 13), the Moving Defendants fail to explain why it would be unreasonable for this Court to exercise jurisdiction over them when they knowingly and purposefully availed themselves of U.S. and California to defraud Ms. Thomson.

The Moving Defendants assert that Ms. Thomson somehow disavowed any connection between her Non-TSA Purchases and the U.S. but fail to proffer any evidence to corroborate that assertion. (*See* MTD at 13.) Again, the lone authority provided by the Moving Defendants, *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439 (9th Cir. 1987), is inapposite. There, the court deemed the exercise of jurisdiction unreasonable because, among other things, the parties had designated Fiji as the appropriate forum, the dispute centered around activities in Fiji and Malaysia, and key evidence appeared to be in Fiji. *Fed. Deposit*, 828 F.2d at 1442-44. None of those factors are present here. The Moving Defendants' perfunctory request for dismissal based on the doctrine of *forum non conveniens* is equally unavailing. Besides pointing to an inapplicable forum selection clause in the TSA, the Moving Defendants fail to establish that the balance of public and private factors "strongly outweigh" Ms. Thomson's choice of forum. *See City of Almaty v. Khrapunov*, 685 F. App'x 634, 636 (9th Cir. 2017); *see also Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) (describing *forum non conveniens* as "an exceptional tool to be employed sparingly").[10]

---

[9] While the Moving Defendants claim that they do not sell XPRT in California, users can *still* purchase XPRT in California.

[10] As this Court possesses personal jurisdiction over the Moving Defendants with respect to Ms. Thomson's Section 10(b) claim, it should exercise pendent personal jurisdiction over the balance of Ms. Thomson's claims, all of which arise out of a common nucleus of operative facts. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076,

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## III.    THE COMPLAINT STATES A FEDERAL SECURITIES CLAIM

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . ." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted). The Court must accept as true all well-pled factual allegations, draw all reasonable inferences in the plaintiff's favor, and determine whether the plaintiff may be entitled to relief under any reasonable reading of the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, in particular, a plaintiff must plead: "(1) a material misstatement or omission by the defendant . . . ; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Khoja*, 899 F.3d at 1008.

A complaint alleging securities fraud must also meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. Under Rule 9(b), a claim must "state with particularity the circumstances constituting fraud," i.e., the claim must allege the who, what, when, where, and how of the fraud. *See* Fed. R. Civ. P. 9(b); *Khoja*, 899 F.3d at 1008 (citation omitted). Under the PSLRA, a plaintiff must specify each alleged misstatement or omission, explain why it is false or misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted" with a fraudulent state of mind or scienter. *See Tellabs*, 551 U.S. at 321 (citing the PSLRA). Ms. Thomson's Complaint clearly pleads these elements.[11]

### A.    The Complaint Falls Well Within the Territorial Reach of the Federal Securities Laws

In *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 267 (2010), the Supreme Court

1080 (9th Cir. 2011). Further, because Ms. Thomson has made a "colorable showing" of personal jurisdiction, she should be permitted to conduct jurisdictional discovery if the Court is inclined to dismiss her Complaint for lack of personal jurisdiction. *See j2 Glob.  Commc'ns, Inc. v. Vitelity Commc'ns, LLC*, 2012 WL 1229851, at *4 (C.D. Cal. Apr. 12, 2012).

[11] The Moving Defendants accept XPRT's status as a security for purposes of the Motion and fail to argue that Ms. Thomson has not alleged economic loss. As such, the Moving Defendants have waived these arguments for the purposes of this Motion. *Am. Career Coll., Inc.*, 2021 WL 5263866, at *2 n.1.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  ruled that Section 10(b) applies only to "transactions in securities listed on domestic exchanges, and

2  domestic transactions in other securities." Ms. Thomson's Non-TSA Purchases clearly fall into the

3  latter category. The Ninth Circuit has adopted the "irrevocable liability test" to determine whether

4  securities are the subject of a domestic transaction. *See, e.g.*, *Stoyas v. Toshiba Corp.*, 896 F.3d 933,

5  947-49 (9th Cir. 2018). Plaintiffs asserting Section 10(b) and Rule 10b-5 claims based on domestic

6  transactions involving securities not registered on national securities exchanges must plausibly

7  allege that the relevant purchaser incurred liability in the U.S. to "take and pay for [the] securities,"

8  or that the seller incurred liability within the U.S. to "deliver [the] securities." *See id.* at 947-49

9  (citing *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012)). Put

10  differently, a plaintiff pleads the existence of a domestic transaction by alleging, among other things,

11  "factual allegations concerning contract formation, placement of purchase orders, passing of title,

12  [or] the exchange of money." *See Stoyas*, 896 F.3d at 949 (citing *Absolute Activist*, 677 F.3d at 70).

13           While the Moving Defendants claim that Ms. Thomson "makes no 'specific factual

14  allegations' about how irrevocable liability was incurred or title was transferred" for Ms. Thomson's

15  purchase of XPRT in California (*see id.* (quoting *Stoyas*, 896 F.3d at 949)), that claim ignores the

16  Complaint's detailed allegations that "Richardson executed [the Non-TSA Purchases] in

17  Ms. Thomson's digital wallets while physically present in California." (*See, e.g.*, ¶ 170.) [12]

18  Transactions qualify as domestic under both *Morrison* and the irrevocable liability test when the

19  relevant transaction is finalized in the U.S. *SEC v. Geranio*, 2013 WL 12146516, at *5 (C.D. Cal.

20  Jan. 29, 2013). For instance, in *SEC v. Geranio*, this Court determined that the agreements became

21  irrevocable when they were countersigned in the U.S., and U.S.-based escrow agents released the

22  funds. *Geranio*, 2013 WL 12146516, at *5. Here, Ms. Thomson's Non-TSA Purchases were all

23  executed in her Ledgers by Richardson, a California resident, while Richardson (and sometimes

24  Ms. Thomson) was physically in California. (¶¶ 6, 24, 170.) The only way to access Ms. Thomson's

25  _____

26  [12] Again, the authorities relied upon by the Moving Defendants are distinguishable as the plaintiffs in those cases either listed foreign addresses in their governing contracts or executed their transactions on foreign exchanges. *Melvin v. Brayshaw*, 2019 WL 6482220, at *3 (C.D. Cal. Oct. 3, 2019) (no domestic transaction where plaintiff listed a Canadian

27  address in the parties' governing contract); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188-89 (2d Cir. 2014) ("Nor does the allegation that [plaintiff] placed a buy order in the United States that was then

28  executed on a foreign exchange, standing alone, establish that [plaintiff] incurred irrevocable liability.") But the Non-TSA Purchases at issue here were not transacted pursuant to the TSA, and were not executed on a foreign exchange.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  XPRT is to physically be located in California. Similar to the escrow agent holding the securities at

2  issue in *Geranio*, Richardson and the Ledgers in her possession held all of the XPRT and have been

3  in the U.S. at all relevant times. As in *Geranio*, therefore, the Non-TSA Purchases constitute

4  domestic transactions within the territorial scope of the federal securities laws. *See Geranio*, 2013

5  WL 12146516, at *5; *see also SEC v. Ripple Labs, Inc.*, 2022 WL 762966, at *13 (S.D.N.Y. Mar.

6  11, 2022) ("[I]rrevocable liability may attach when digital assets enter and leave" a digital asset

7  trading platform).[13]

8       The Moving Defendants argue that the Complaint fails to allege a domestic transaction

9  because the TSA disavows any connection to the U.S. (*see* MTD at 1, 13, 15), but that argument

10  completely ignores that the Non-TSA Purchases were not covered by the TSA. As is the case with

11  the Moving Defendants' arbitration clause arguments, they have similarly failed to cite any provision

12  in the TSA which indicates that it covers anything but the specified purchases set forth in Schedule

13  1 of the TSA. Consequently, Ms. Thomson has sufficiently alleged a domestic violation of the

14  Exchange Act.

15      **B.     The Complaint Adequately Alleges the Moving Defendants' Material**

16              **Misrepresentations and Omissions**

17       To prevail on a Section 10(b) claim, a plaintiff must also demonstrate that the defendant

18  made a misleading statement or omission of material fact. *Matrixx Initiatives, Inc. v. Siracusano*,

19  563 U.S. 27, 38 (2011). A statement is false or misleading if it would give a reasonable investor the

20  impression of a state of affairs that differs in a material way from the one that actually exists. *See*

21  *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (citation omitted). "Even if

22  a statement is not false, it may be misleading if it omits material information." *See Khoja*, 899 F.3d

23  at 1008-09 (citation omitted). "Disclosure is required . . . when necessary 'to make . . . statements

24  made, in the light of the circumstances under which they were made, not misleading.'" *Id.* (quoting

25  *Matrixx*, 563 U.S. at 44). "[A] misrepresentation or omission is material if there is a substantial

26  likelihood that a reasonable investor would have acted differently if the misrepresentation had not

27

28  [13] The Complaint also alleges that Persistence's validator nodes were "distributed globally" and that at least one of
Persistence's validator nodes was operated in California, by Richardson. (¶¶ 38 n.6, 162.) These allegations also support
that the Non-TSA Purchases were domestic transactions under *Morrison*. *See Tezos*, 2018 WL 4293341, at *8.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

been made or the truth had been disclosed." *See id.* (citation omitted). Ms. Thomson alleges two specific categories of material misstatements or omissions by the Moving Defendants: (1) omissions concerning Richardson's kickback; and (2) misstatements regarding XPRT's performance, including false promises of outsized returns. (*See, e.g.*, ¶¶ 138(a)-(r).)

### 1.  The Moving Defendants Concealed Richardson's Kickback

To effectuate their scheme and secure Ms. Thomson's Non-TSA Purchases, the Moving Defendants intentionally covered up the kickback Persistence paid to Richardson. (¶¶ 138(b), 178.) The Moving Defendants agreed amongst themselves to omit any mention of Richardson's kickback from Ms. Thomson. (¶¶ 138(a)-(c), 178-80, 194.) In fact, ██████████████████████████ ████████████████████████████████████ *See* André Decl. Ex. 2 at § 7.4.) Ms. Thomson relied on the natural assumption that her friend, Richardson, who affirmatively told Ms. Thomson that she was not being paid by the Moving Defendants, was acting in Ms. Thomson's best interests. (*See* ¶¶ 108, 113, 173; *see also* ¶ 174 ("In an email on November 10, 2021, Richardson even told Ms. Thomson, 'to clarify any doubt,' that Richardson was 'not taking any commissions or fees' with respect to Ms. Thomson's investment with Persistence.").) Ms. Thomson did not know that Richardson was being bribed by the Moving Defendants, and therefore, could not know that the information being fed to her was false and misleading. (¶¶ 142, 174, 183, 220.) Ms. Thomson fully relied on these glaring omissions regarding the kickback and would not have made the Non-TSA Purchases had she been told the truth about Richardson's kickback. (¶¶ 142, 183, 220, 269.) ██ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████ *See* André Decl. Ex. 2 at § 7.4.) As such, the Moving Defendants' omissions concerning the kickback were materially misleading and actionable.

The Moving Defendants fail to advance an argument that warrants a different conclusion. The Moving Defendants' and Richardson's statements regarding the kickback were unquestionably misleading because they gave Ms. Thomson an impression of a state of affairs that differed in a material way from the one that actually existed. *See Berson*, 527 F.3d at 985; *see also In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142-44 (9th Cir. 2017) (statements misleading because they

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

"'affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]'"); *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *16 (N.D. Cal. June 2, 2020) ("[CEO's] statement did not align with the information he possessed at the time and was therefore misleading").[14]

### 2. The Moving Defendants Induced Ms. Thomson with False Statements About XPRT's Performance

The Moving Defendants repeatedly touted XPRT's performance to convince Ms. Thomson to invest in Persistence. (¶¶ 5, 37-73; Dizik Decl. ¶ 24(a)-(o).) Through tweets and statements funneled to Ms. Thomson through Richardson, the Moving Defendants made false promises of lucrative staking opportunities and outsized returns in APY and APR. (¶¶ 85-86, 99-107, 122-126, 128-138; Dizik Decl. ¶¶ 24(a)-(o).) These statements, however, were false and misleading, and omitted material facts. (¶¶ 7, 138-142, 182, 187, 217; Dizik Decl. ¶¶ 24(a)-(o).) In reality, Ms. Thomson was experiencing returns that were "significantly less" than the figures promised by the Moving Defendants (and Richardson). (¶¶ 7, 138(d)-(r); Dizik Decl. ¶¶ 20-24.) Further, the Moving Defendants knew (or should have known) that the information being communicated to Ms. Thomson was false and misleading, but made the aforementioned misrepresentations and omissions anyway, in order to extract all the value they could from their "whale," Ms. Thomson. (¶¶ 217, 244, 256, 289.) Ms. Thomson also alleges that she would not have made the Non-TSA Purchases of XPRT had she not been told these false statements regarding XPRT's performance. (¶¶ 4, 138, 140-42, 181-82, 219-20, 236.)

The Moving Defendants argue that many of their tweets are non-actionable (*see* MTD at 17-18), but those arguments lack merit. For instance, the Moving Defendants argue that a September 3, 2021 tweet adjusting APR guidance downward "negat[es] any possible inference that Persistence was trying to deceive anyone" with its previous April 26, 2021 tweet promising "no lower than 35%

---

[14] The Moving Defendants' reliance on *U.S. v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016) is misplaced as that court analyzed omissions supporting a criminal wire fraud charge—as opposed to a civil Section 10(b) claim. In any event, the Moving Defendants possessed a duty to disclose the kickback scheme to Ms. Thomson because their representations to Ms. Thomson regarding the kickback scheme were false and misleading. *See, e.g.*, *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017) (duty to provide information exists where statements made were misleading in light of the context surrounding the statements).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  APR for the first two years." (*See id.* at 17.) The Moving Defendants, however, fail to proffer a

2  single legal authority to suggest that an adjustment of this kind would render the April 26, 2021

3  tweet non-actionable. Persistence was clearly "trying to deceive" as evidenced by the multitude of

4  specific falsehoods contained in the Dizik Declaration (*See* MTD at 17; Dizik Decl. ¶¶ 24(a)-(o).)

5         Similarly, the Moving Defendants' assertion that Ms. Thomson "does not allege [that] she

6  ever saw any of these tweets" is nothing but a smokescreen given Ms. Thomson's statements in the

7  Complaint that she relied on the Moving Defendants' and Richardson's false statements concerning

8  XPRT's performance to execute her Non-TSA Purchases. (*See id.* at 18; ¶¶ 138, 140-42.) Likewise,

9  it strains credulity to suggest that the April 26, 2021 tweet "has little to do with [Ms. Thomson's]

10 claim" in light of her allegations that she relied on the Moving Defendants' misrepresentations

11 regarding XPRT's performance to consummate her Non-TSA Purchases. (See MTD at 18; ¶¶ 265,

12 267.) Moreover, the decline of staking rewards following the April 26, 2021 tweet "directly

13 contradict[s]" what the Moving Defendants were communicating to Ms. Thomson and the market at

14 that time. *See Khoja*, 899 F.3d 988 at 1008.

15        The Moving Defendants' contentions regarding Persistence's tweets on April 8 and 9, 2022

16 are equally unpersuasive. (*See* MTD at 18.) Not only were these tweets posted *before* the May and

17 June, 2022 Non-TSA Purchases, but they concerned a Persistence product—albeit a distinct product

18 from the XPRT token—that impacted the value of XPRT. (¶¶ 68-69, 169.) The Dizik Declaration

19 also establishes that these tweets were demonstrably false, as the relevant APR percentages to be

20 earned were more in the range of 62% to 74%. (Dizik Decl. ¶ 24(n).) This is a far cry from the quoted

21 336% APR that Persistence advertised. (Dizik Decl. ¶ 24(n).)[15]

22     **C.**    **The Complaint Adequately Alleges a Strong Inference of Scienter**

23        The Complaint also pleads sufficient facts to give rise to a strong inference that the Moving

24

---

25 [15] Ms. Thomson's Complaint has also adequately alleged that the Moving Defendants' misstatements and omissions were material. Because Ms. Thomson alleges that she relied on the Moving Defendants' false statements regarding the

26 performance of XPRT and Richardson's kickback (¶¶ 138, 140-42, 265-69), her allegation that she "would not have invested . . . had [the Moving] Defendants not made [their] misstatements and omissions," (¶ 269), is anything but

27 conclusory. *See, e.g., Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946-47(9th Cir. 2005) (plaintiff investor pled materiality by raising a substantial likelihood that a reasonable investor would not have engaged in the

28 stock purchase after learning the company had $25 million less in cash than it was led to believe). The Moving Defendants should not be permitted to argue, in conclusory fashion, that the facts alleged in Ms. Thomson's Complaint are incorrect, as that is not the proper standard on a motion to dismiss. *See, e.g., Tellabs*, 551 U.S. at 322-23.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Defendants acted with scienter. Scienter can be proven by showing either "deliberate recklessness or 'some degree of intentional or conscious misconduct.'" *See ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1035 (9th Cir. 2016) (quoting *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008)). "The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-23 (emphasis in original). The inference of scienter "need not be . . . the 'most plausible of competing inferences.'" *Tellabs*, 551 U.S. at 324 (citation omitted). If "two possible inferences—one fraudulent and the other nonfraudulent—are equally compelling, a plaintiff has demonstrated a strong inference of scienter." *ESG Capital*, 828 F.3d at 1033; *see also Tellabs*, 551 U.S. at 324.

Here, the Moving Defendants not only made false promises of exorbitant returns to Ms. Thomson, but purposefully concealed the kickbacks Richardson received from Persistence. (¶¶ 7, 138-142, 178-80, 182, 187, 194, 217.) The Moving Defendants knew (or should have known) that the information being communicated to Ms. Thomson was false and misleading, but made the aforementioned misrepresentations and omissions anyway to profit off of Ms. Thomson. (¶¶ 217, 244, 256, 289.) Such allegations give rise to a strong inference of scienter. *See Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1124-25 (C.D. Cal. 2012) (scienter adequately pled where the defendant company "misleadingly concealed related party transactions that benefitted the son of the CEO"); *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 167 (S.D.N.Y. 2008) (defendants' failure to disclose "secret oral side agreements" and subsequent lies about such agreements gave rise to strong inference of scienter).

### D.    The Complaint Adequately Pleads Reliance

Ms. Thomson also adequately alleges reliance. To plead reliance, a complaint must allege a "causal connection between the alleged fraud and the [relevant] securities transaction . . . ." *See ESG Capital*, 1035-36 (quoting *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009)). Here, Ms. Thomson not only alleges that she relied on the Moving Defendants' misrepresentations and omissions regarding Richardson's kickback and XPRT's performance, but also that she would not have made her Non-TSA Purchases "but for" the Moving Defendants' false statements. (¶¶ 4,

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

138, 140-42, 181-82, 219-20, 236.) In short, absent the Moving Defendants' targeted misinformation campaign, Ms. Thomson never would have invested in Persistence. (¶ 233.) Because Ms. Thomson alleges a causal connection between the Moving Defendants' fraud and her Non-TSA Purchases, she has sufficiently pled reliance. *See ESG Capital*, 1036.[16]

**E.    The Complaint Adequately Pleads Loss Causation**

The Ninth Circuit has described loss causation as "a matter of proof . . . not to be decided on a Rule 12(b)(6) motion to dismiss," observing that "it is normally inappropriate to rule on loss causation at the pleading stage." *See In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (internal citations and quotation marks omitted). Even when it is appropriate to rule on loss causation at the pleading stage, loss causation is a low bar for plaintiffs. To establish loss causation, a plaintiff must simply "demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff." *See id.* at 1055 (citations omitted). Ms. Thomson easily satisfies that low bar here. The Complaint alleges that, "but for" the false statements and omissions disseminated by the Moving Defendants and Richardson, Ms. Thomson would not have made her Non-TSA Purchases and suffered approximately $24,731,559 in damages. (¶¶ 4, 220.) At the pleading stage, such allegations are sufficient to establish loss causation. *See, e.g.*, *Berson*, 527 F.3d at 989 (plaintiffs pled loss causation given their allegations that, "but for the circumstances that the fraud concealed[,]" "plaintiffs' investment . . . would not have lost its value.").

The Moving Defendants argue that Ms. Thomson has failed to allege loss causation because she fails to attribute the drop in XPRT's price to any of the Moving Defendants' misrepresentations and omissions. (*See* MTD at 20-21, n.16.) But that argument takes too narrow a view of loss causation. As one of the Moving Defendants' own authorities makes clear, "[t]he loss causation inquiry typically examines how directly the subject of the fraudulent statement caused the loss, and

---

[16] The Moving Defendants' argument that Ms. Thomson "[n]ever saw . . . any of the [Moving Defendants'] false or misleading tweets" is a red herring. (*See* MTD at 20.) Indeed, Ms. Thomson alleges that she relied on the Moving Defendants and Richardson's false statements concerning XPRT's performance. (¶¶ 138, 140-42, 265-69.) At the very least, the fact the Moving Defendants' tweets concerning XPRT's performance mirrored what Richardson was communicating to Ms. Thomson on the subject substantiates Ms. Thomson's claim that Richardson was being fed falsehoods by the Moving Defendants and funneled those same falsehoods to Ms. Thomson. (¶¶ 6, 7, 74, 116-21.)

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  whether the resulting loss was a foreseeable outcome of the fraudulent statement." *See Szulik v.*
2  *Tagliaferri*, 966 F. Supp. 2d 339, 368 (S.D.N.Y. 2013) (quoting *Suez Equity Investors, L.P. v.*
3  *Toronto-Dominion Bank*, 250 F.3d 87, 96 (2d. Cir. 2001)). Indeed, courts have routinely found loss
4  causation where the plaintiff lost its investment in connection with a transaction in which the
5  defendant, unbeknownst to the plaintiff, received a kickback. *See, e.g.*, *Szulik,* 966 F. Supp. at 368
6  (concluding that plaintiffs adequately alleged loss causation given plaintiffs' allegations that they
7  would not have paid full management fees had they known about the kickback defendants were
8  receiving; "[t]he fees plaintiffs paid . . . represent an actual loss which is sufficiently connected to
9  the alleged undisclosed 'kickback' payments."). There is no reason why a different result should be
10  reached here. *See also In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 410 (S.D.N.Y. 2016) (concluding
11  that the failure to disclose a kickback payment can serve as a basis for establishing loss causation).

12  **IV.    MS. THOMSON'S STATE LAW CLAIMS ARE ADEQUATELY ALLEGED**

13      Even if this Court chooses to dismiss Ms. Thomson's Section 10(b) claim, it should
14  nevertheless exercise supplemental jurisdiction over Ms. Thomson's surviving state law claims.
15  Indeed, courts in the Ninth Circuit routinely do so, particularly for purposes of judicial economy and
16  convenience. *See, e.g.*, *Rosenthal v. Wells Fargo Bank, N.A.*, 771 F. App'x 390, 391 (9th Cir. 2019);
17  *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008). If this Court dismisses
18  Ms. Thomson's federal securities claim and refuses to exercise supplemental jurisdiction over her
19  state law claims, there is simply no guarantee that the arbitrator presiding over the Arbitration will
20  accept jurisdiction over them (or Aggarwal for that matter). As this Court is Ms. Thomson's only
21  opportunity to receive redress for her Non-TSA Purchases, it should accommodate her choice of
22  forum and retain jurisdiction over her state law claims. Indeed, the Moving Defendants remain
23  unable to explain why exercising supplemental jurisdiction would be improper.

24      **A.    Ms. Thomson's State Law Claims Are Not Extraterritorial**

25      Jurisdiction is appropriate under California's securities laws "[w]hen an offer to sell is made
26  in this state; [w]hen an offer to buy is accepted in this state; or [i]f both the seller and purchaser are
27  domiciled in this state, the security is delivered to the purchaser in this state." *Zakinov v. Ripple*
28  *Labs, Inc.*, 2020 WL 922815, at *16 (N.D. Cal. Feb. 26, 2020) (citing Cal. Corp. Code § 25008(a)).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Before Persistence's website was scrubbed to remove potentially incriminating evidence (¶¶ 50-52, 237-241), Persistence's website prominently offered California consumers an opportunity to "[a]cquire XPRT" and listed links to exchanges on which XPRT could be purchased. (¶ 238.) The content on Persistence's website, therefore, constituted an offer to sell within California for purposes of California state securities law, and application of Cal. Corp. Code § 25503 and 25501 is entirely appropriate. *See Zakinov*, 2020 WL 922815, at * 16 (cryptocurrency website that "provid[ed] advice on 'How to Buy [the cryptocurrency],'" and "provide[d] links to exchanges [with] instructions on 'how to buy [the cryptocurrency]' on those exchanges" constituted a domestic offer to sell within California for purposes of California's securities laws).

## B.    Ms. Thomson's Registration Claim is Timely

Claims under § 25503 for violations of § 25110 must be "brought before the expiration of two years after the violation upon which it is based or . . . one year after the discovery by the plaintiff of the facts constituting such violation, whichever shall first expire." Cal. Corp. Code § 25507; *Salameh v. Tarsadia Hotels*, 2010 WL 2839013, at *7 (S.D. Cal. July 20, 2010) (finding that, for purposes of Cal. Corp. Code § 25503, "the statute of limitations is triggered either upon the date of purchase or the date on which the securities should have been registered."). With respect to the date of violation, in particular, courts have found that the limitations period begins to run on the date the securities were purchased. *Koehler v. Pulvers*, 614 F. Supp. 829, 844 (S.D. Cal. 1985). Here, Ms. Thomson began executing her Non-TSA Purchases on October 4, 2021. (¶ 169.) Because Ms. Thomson filed both her initial complaint and the operative Complaint in this matter within two years of that initial purchase (*see* ECF Nos. 1, 25), her registration claim (Count IV) is timely. *See, e.g.*, *Loe v. Miller Min. Co.*, 1989 WL 79837, at *4 (9th Cir. 1989) (affirming a district court's finding that the defendant violated Cal. Corp. Code § 25110 when the transaction at issue occurred "within the absolute two year limitations period" and where the defendant failed to explain why the plaintiff "should have been aware of [the defendant's] failure to register . . . more than one year before the filing of the suit.")

The Moving Defendants' reliance on *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 338-39 (S.D.N.Y. 2021) is misplaced because that case analyzes a different statute. The

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   court in *In re Bibox* was interpreting Section 12(a)(1) of the federal securities laws. *See id.* Unlike

2   claims brought under Cal. Corp. Code § 25503, Section 12(a)(1) claims must be brought "within one

3   year after the violation upon which it is based" and do not include a discovery rule. *Id.* at 338

4   (quoting and describing limitations period under Section 12(a)(1)). As such, *In re Bibox* cannot

5   possibly support the Moving Defendants' contention that the date of purchase and date of discovery

6   of the violation are the same under Cal. Corp. Code § 25503. The only other case cited by the Moving

7   Defendants in support of their argument for a truncated statute of limitations is equally unpersuasive

8   as the Moving Defendants offer no explanation why an opinion from a Florida court analyzing a

9   Florida statute should dictate the dismissal of Ms. Thomson's registration claim here. (*See* MTD at

10  23.) Consequently, because Ms. Thomson's Non-TSA Purchases took place well before the two-

11  year statute of limitations expired, Ms. Thomson's registration claim is timely.

12          **C.**      **The Remaining State Law Claims are Properly Pled**

13        Because Ms. Thomson's remaining state law claims are subject to the same heightened

14  pleading standards that apply to her federal securities claim (and consist of the same elements) (*see*

15  MTD at 24), her state law claims should survive dismissal for the reasons articulated above. (*See*

16  *supra* Section III.) In any event, the Moving Defendants fail to advance any other argument that

17  would justify dismissal. The Moving Defendants contend that Ms. Thomson's conspiracy claim

18  (Count II) is deficient because it fails to show actual knowledge of a tort, agreement, and intent to

19  aid in its commission. (*See* MTD at 25.) That contention, however, blatantly ignores the Complaint's

20  detailed allegations that the Moving Defendants and Richardson conspired to induce Ms. Thomson

21  to invest in Persistence. (¶ 108.) Together, they fed her a series of misrepresentations and omissions

22  that overstated XPRT's performance and failed to disclose the kickbacks Richardson was receiving

23  from Persistence. (¶¶ 115-25, 178.) The Moving Defendants and Richardson did all of this pursuant

24  to a secret agreement in which the Moving Defendants agreed to pay Richardson a kickback and

25  keep any reference to the kickback from Ms. Thomson. (¶¶ 1-2, 75.) The Moving Defendants and

26  Richardson knew that their statements to Ms. Thomson were false or misleading and/or recklessly

27  disregarded the truth of whether their statements were false or misleading. (¶¶ 60, 244, 256.) These

28  allegations are, therefore, sufficient to establish conspiracy.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## V.    MS. THOMSON SHOULD BE GRANTED LEAVE TO AMEND

Alternatively, if the Court is inclined to grant any portion of the Moving Defendants' Motion, the Court should afford Ms. Thomson an opportunity to amend. Federal Rule of Civil Procedure 15(a)(2) "provides that a court 'should freely give leave [to amend a pleading] when justice so requires.'" *Sovany Beverages Co. v. Newport Falvors & Fragrances*, 2022 WL 21828627, at * 7 (C.D. Cal. Aug. 15, 2022) (Frimpong, J.) (quoting Fed. R. Civ. P. 15(a)(2)). "[A]mendments should be granted with 'extreme liberality' in order to 'facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Veribi, LLC v. Compass Mining, Inc.*, 2023 WL 3555471, at *2 (C.D. Cal. Apr. 20, 2023) (Frimpong, J.) (quoting *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). "[T]he burden of persuading the court that leave should not be granted rests with the nonmoving party." *See Compass Mining*, 2023 WL 3555471, at *2 (citations omitted). Courts traditionally consider five factors when determining whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended the complaint. *Drendel v. Bank of Am., N.A.*, 2023 WL 5504987, at *10 (C.D. Cal. July 3, 2023) (Frimpong, J.) (citations omitted). These factors weigh in favor of allowing amendment here. There is no evidence to suggest that Ms. Thomson has acted in bad faith in these proceedings or that leave to amend will prejudice the Moving Defendants. Nor will amendment cause undue delay "as the action is still at the pleadings stage." *Compass Mining*, 2023 WL 3555471, at *10. Further, there is significant evidence that "amendment would not be futile as an amended complaint could introduce more detailed factual allegations for the Court to consider." *See id.* Indeed, Ms. Thomson has recently uncovered secret messages that were exchanged between Aggarwal and Richardson (while Richardson was located in California) in which the two explicitly discussed concealing the kickback from Ms. Thomson. (*See* André Decl. at Ex. 1.) Ms. Thomson should, therefore, be granted leave to amend her Complaint and include these incriminating messages—and other facts—for the Court to consider. *See Compass Mining*, 2023 WL 3555471, at *10; *Drendel*, 2023 WL 5504987, at *7 (dismissing fraud claim with leave to amend where "deficiencies [could] be remedied by amendment").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**CONCLUSION**

The Moving Defendants' Motion should be denied in its entirety. Alternatively, if any portion of the Motion is granted, Ms. Thomson respectfully requests an opportunity to amend.

Dated: December 21, 2023

**MCDERMOTT WILL & EMERY LLP**

By: */s/ Julian André*

JULIAN ANDRÉ
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone: (310) 277-4110
Facsimile:  (310) 277-4730
Email: jandre@mwe.com

TODD HARRISON
JOSEPH B. EVANS
One Vanderbilt Avenue
New York, NY  10017-3852
Telephone:  +1 212 547 5400
Facsimile: +1 212 547 5444
Email: tdharrison@mwe.com
jbevans@mwe.com

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## CERTIFICATE OF COMPLIANCE

This certifies that Plaintiff Taylor Thomson's Memorandum of Points and Authorities in Opposition to Defendants Persistence Technologies (BVI) PTE LTD. and Tushar Aggarwal's Motion to Dismiss complies with the requirements of Local Rule 11-6, as amended by the Honorable Maame Ewusi-Mensah Frimpong's Civil Standing Order of November 2022 (available at https://www.cacd.uscourts.gov/sites/default/files/documents/MEMF/AD/Civil%20Standing%20 Order.pdf). The Memorandum contains twenty-five pages and includes a Table of Authorities and a Table of Contents. The Memorandum uses Times New Roman twelve-point font for body text and ten-point font for footnotes.

Dated: December 21, 2023                                          /s/ Julian André
                                                                                 Julian André