Ashley Richardson
25399 Markham Ln
Corral De Tierra, CA 93908
(310) 490 - 2476
Ashrichardson@mac.com

IN PRO PER

**FILED**
CLERK, U.S. DISTRICT COURT
2/2/24
CENTRAL DISTRICT OF CALIFORNIA
BY: _____eee_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR THOMSON,<br><br>    Plaintiff,<br><br>vs.<br><br>ASHLEY RICHARDSON,<br><br>    Counter Claimant | Case No.: **2:23-cv-04669-MEMF-MAR**<br><br>FIRST AMENDED COUNTERCLAIM |

### PRELIMINARY STATEMENT

1. Taylor Thomson is a billionaire with a history of making reckless financial decisions and slandering innocent parties in the wake of her failures. Thomson has an extensive history of slanderous accusations and abusive conduct towards former and existing staff and family members, in addition to illegally wiretapping and surveiling staff members without their knowledge.

2. Ashley Richardson was one of Thomson's close personal friends who witnessed the aforementioned abuse and misuse of power for many years. Ashley feared Thomson, and as a result did anything she would ask.

### THOMSON'S DEFAMATORY LIES ABOUT RICHARDSON

3. During the time period of November 2021 until present, Richardson is informed and believes and thereon alleges that Thomson made statements to certain individuals in the Film and Television industry that Richardson had committed fraud and theft with respect to cryptocurrency.

FIRST AMENDED COUNTERCLAIM - 1

4. In addition to certain individuals in the entertainment field, Richardson is further informed and believes that Thomson made statements to individuals within Richardson's and Thomson's shared social circle that Richardson had committed Fraud and Theft of cryptocurrency.

5. In addition to the aforementioned individuals, Richardson is further informed and believes that Thomson made statements to individuals within Cyrptocurrency and Financial sectors that Richardson had committed Fraud and Theft of cryptocurrency.

6. The false Defamatory Lies are reasonably susceptible of a defamatory meaning on their face in that they falsely assert that Plaintiff engaged in fraudulent conduct, and the Defamatory Lies have a direct tendency to injure Plaintiff with respect to her professional reputation, character and business. Plaintiff is informed and believes and based thereon alleges that the Defamatory Lies were spread with malice and with knowledge that they were false, or with a reckless disregard for the truth.

7. Plaintiff is informed and believes and based thereon alleges that Thomson intentionally portrayed Richardson in this manner knowing the depiction was false, or without any reasonable grounds for believing it to be true.

8. Among other things, the Defamatory Lies falsely assert that Richardson engaged in illegal criminal conduct, and the Defamatory Lies are libelous on their face and clearly expose Richardson to hatred, contempt, ridicule and obloquy and/or cause Richardson to be shunned or avoided and have a tendency to injure Richardson in her occupation.

9. The Defamatory Lies disseminated by Thomson were unprivledged and were intended by Thomson to directly injure Richardson with respect to her professional reputation, character, trade and business. Richardson is informed and believes and based thereon alleges that Thomson knew or recklessly disregarded the fact that the Defamatory Lies would likely damage Plaintiff's reputation.

FIRST AMENDED COUNTERCLAIM - 2

10. As a direct and proximate result of the above described conduct by Thomson, Richardson has suffered general and special damages in an amount not presently known, but believed to be not less than Five Million Dollars ($5,000,000).

11. Richardson is informed and believes and based thereon alleges that the aforesaid acts of Thomson were done intentionally or with a conscious disregard of Richardson's rights and with an intent to vex, injure, or annoy Richardson such as to constitute oppression, fraud, or malice, thus entitling Richardson to exemplary and puntitive damages in an amount appropriate to punish or set an example of Thomson, and to deter such conduct in the future which will be proved at trial.

**THOMSON'S INENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

12. Thomson has an extensive and well documented history of defamation and falsely accusing numerous existing and former staff members of theft and extreme negligence, in a way that was reckless and damaging.

13. Thomson has an extensive history of unlawfully wiretapping phones and surveilling staff members with hidden video cameras and microphones without their knowledge or consent.

14. Thomson has an extensive history failing to take accountability for her financial or purchase decisions, and as a result of falsely blaming former and existing staff for giving her bad financial advice, stealing (including theft of crypto currencies, clothing, and other items), or making mistakes or omissions that she deemed the cause of substantial financial loss and harm.

15. Richardson personally witnessed and was well aware of the aforementioned statements (11, 12 & 13) as a result Richardson was extremely fearful be a member of Thomson's staff.

FIRST AMENDED COUNTERCLAIM - 3

16. Thomson as an extensive history failing to take accountability for her financial or purchase decisions, and as a result of falsely blaming former and existing staff for giving her bad financial advice, stealing (including theft of crypto currencies, clothing, and other items), or making mistakes or omissions that she deemed the cause of substantial financial loss and harm.

17. Contrary to the claims made in Thomson's lawsuit, it was Thomson that introduced Richarson to crypto investing in December of 2017, at which time Thomson urged Richardson to invest as much money as she could into Bitcoin, which Richardson did. Shortly after this initial purchase the market crashed and Richardson lost the majority of her investment when forced to sell at a substantial loss.

18. Thomson has a lengthy history spanning over a decade of making extreme demands of Ashley; the most recent demands were in the form of purchasing a number of low cap crypto currencies not widely available on the open market.

19. Thomson's request of various purchases of these crypto currencies was continuous, with urgency, at all hours and always at the sole request of Thomson. In addition, Thomson expected Richardson to do extensive research on the crypto currencies as well as finding her accountants, and acting as the custodian for a high value of crypto currencies, as well as helping her with her move, the care of her dogs, and the oversight of her staff including spying on them to make sure they were doing their jobs.

20. Richardson repeatedly made it clear to Taylor in person and in writing that she was not a financial advisor and that any information she provided was research, and not financial advice. At no time did Taylor make a list of expectations or offer to compensate Ashley in any way, despite being well aware that her constant requests and purchases had become an all consuming and full time undertaking for Richardson, so consuming that Richardson told Thomson several times she was concerned that losing other employment opportunities.

21. Richardson expressed to Thmson numerous times her concerns relating to Thomson's high volume of purchases and as a result the high level of risk she was assuming. On numerous occasions Richardson begged Thomson to reduce her risk and to purchase smaller amounts, requests that Thomson repeatedly ignored, and went as far to say that this was Richardson's "poverty mentality" and why Richardson "would always be poor".

22. Richardson expressed numerous times the extreme fear she had for her personal safety in relation to holding the physical custody of Thomson's crypto assets in her personal home, Thomson went so far as to suggest that no one would expect

FIRST AMENDED COUNTERCLAIM - 4

Ashley to have so much crypto since Ashley was so poor, Thomson also asked Richardson (with with a smile) if she would "be willing to take a bullet" if she was put in a position of being attacked physically for Taylor's crypto assets.

23. Despite never having any formal agreement with Richardson for services or outlined expectations of any kind, Thomson turned violently against Richardson and began accusing her of negligence followed by a number of Thomson's staff members making demands for information Richardson did not have and was unaware she needed to track. This created extreme stress for Ashley who suffered a severe mental and physical breakdown as a result.

24. Thomson's extreme reckless disregard for the probability that her actions and the pressure placed on Richardson would cause Richardson severe emotional distress.

25. Ashley suffered and continues to suffer severe emotional and physical distress, continuous panic attacks, insomnia, and crippling depression as a direct result of Thomson's outrageous conduct.

26. As a direct and proximate result of the above described conduct by Thomson, Richardson has suffered general and special damages in an amount not presently known, but believed to be not less than Five Million Dollars ($5,000,000).

27. Richardson is informed and believes and based thereon alleges that the aforesaid acts of Thomson were done intentionally or with a conscious disregard of Richardson's rights and with an intent to vex, injure, or annoy Richardson such as to constitute oppression, fraud, or malice, thus entitling Richardson to exemplary and punitive damages in an amount appropriate to punish or set an example of Thomson, and to deter such conduct in the future which will be proved at trial.

WHEREFORE, Plaintiff prays for judgement against Thomson as follows:

1. For compensatory damages according to proof at the time of trial in an amount not less than Ten Million Dollars ($10,000,000), together with interest thereon at the maximum legal rate;

2. For punative damages pursuant to Civil Code Section 3294 in an amount appropriate to punish and set an example of Defendants, and each of them, and to deter such conduct in the future, the exact amount of such punitive damages subject to proof at the time of trial;

3. For all costs of suit and reasonable attorneys' fees incurred herin by Counter Claimant as may be provided by law;

FIRST AMENDED COUNTERCLAIM - 5

4. For interest as may be provided by law; and

5. For such other and further relief as the Court deems just and appropriate.

DATE: Feb 2, 2024          ASHLEY RICHARDSON – IN PRO PER

By:

ASHLEY RICHARDSON

FIRST AMENDED COUNTERCLAIM - 6

## JURY DEMAND

Counterclaimant Ashley Richardson hereby demands trial by jury.

Date: February 2, 2024                    ASHLEY RICHARDSON

                                          By: ASHLEY RICHARDSON

                                          COUNTERCLAIMANT

FIRST AMENDED COUNTERCLAIM - 7