O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR THOMSON,<br><br>                    Plaintiff,<br><br>        v.<br><br>PERSISTENCE TECHNOLOGIES BVI PTE LTD.; TUSHAR AGGARWAL; and ASHLEY RICHARDSON,<br><br>                    Defendants.<br><br>ASHLEY RICHARDSON,<br><br>                    Counterclaimant,<br><br>        v.<br><br>TAYLOR THOMSON,<br><br>                    Counter Defendant. | Case No.: 2:23-cv-04669-MEMF-MAR<br><br>**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER [ECF No. 82]** |

Before the Court is an Ex Parte Application for a Temporary Restraining Order filed by Plaintiff and Counterclaim Defendant Ashley Richardson. *See* ECF No. 82. The Court deems this

matter appropriate for resolution without oral argument. *See* C.D. Cal. L.R. 7-15. For the reasons stated herein, the Court DENIES the Ex Parte Application.

## I. Background

The Court addressed the background of this litigation at length in a previous Order. *See* ECF No. 76. The Court will only address aspects here that are relevant to this Order.

### A. Factual Background as to this Litigation[1]

Plaintiff and Counterclaim Defendant Taylor Thomson ("Thomson") is an individual. *See* ECF No. 25 ¶ 13. Defendant and Counterclaim Plaintiff Ashley Richardson ("Richardson") is also an individual. *See id.* ¶ 16.

Thomson alleges, in summary, that Richardson and other Defendants conspired to target Thomson and induce Thomson to invest in a certain cryptocurrency, and made a series of false statements to both Thomson and the public in furtherance of this. *See id.* ¶¶ 37–241. Richardson alleges in turn, via her counterclaims, that she and Thomson were friends, that Thomson demanded that Richardson invest in cryptocurrency on Thomson's behalf, that Thomson made rude statements to Richardson and called on Richardson at all hours with requests, and that Thomson eventually made defamatory statements about Richardson. *See* ECF No. 58.

### B. Procedural History

Thomson filed suit in this Court on June 13, 2024, against Richardson, Defendant Persistence Technologies BVI Pte Ltd. ("Persistence"), and Defendant Tushar Aggarwal ("Aggarwal"). *See* ECF No. 1. Thomson filed her First Amended Complaint ("FAC") on September 23, 2023. *See* FAC. The FAC asserts ten causes of action: (1) fraud, against all Defendants; (2) civil conspiracy to commit fraud, against all Defendants; (3) violation of section 10(b) of the Securities Exchange Act of 1934, against all Defendants; (4) selling unregistered securities in violation of California Corporations Code sections 25503 and 25110, against Persistence and Aggarwal; (5) misrepresentation or omission of material fact in the sale of securities in violation of California Corporations Code

---

[1] This section is derived from the allegations in the parties' various pleadings—the Court includes these allegations only as background and makes no finding on whether they are true.

sections 25501 and 25401, against all Defendants; (6) false advertising in violation of California Business and Professions Code Section 17500, against all Defendants; (7) violation of California Business and Professions Code Section 17200, against all Defendants; (8) aiding and abetting common law fraud, against all Defendants; (9) violation of California Corporations Code Section 25004, against Richardson; and (10) violation of California Corporations Code Section 25009, against Richardson. *See* FAC ¶¶ 242–320.

Richardson filed an Answer and filed Counterclaims against Thomson on December 22, 2023. *See* ECF Nos. 48, 57. Richardson filed First Amended Counterclaims ("FACC") on February 2, 2024. *See* ECF No. 58. Richardson's FACC asserts two causes of action against Thomson: (1) defamation and (2) intentional infliction of emotional distress. *See id*.

Persistence and Aggarwal filed a Motion to Dismiss Thomson's claims, and Thomson filed a Motion to Dismiss Richardson's Counterclaims. *See* ECF Nos. 34, 61. The Court issued an Order granting Defendants' Motion to Dismiss and Denying Thomson's Motion to Dismiss on July 15, 2024. *See* ECF No. 76.

Thomson filed the instant Ex Parte Application on October 30, 2024, along with various supporting documents. *See* ECF No. 82 ("Application" or "Appl."); ECF Nos. 82-1–82-7. In her Application, Thomson asserts that Richardson has been harassing Thomson and Thomson's daughter. *See id.* Thomson seeks a temporary restraining order that prohibits Richardson from "(1) from directly contacting [Thomson] or her daughter, Madeleine Thomson, and (2) from coming within 100 yards of Taylor Thomson and her daughter, Madeleine Thomson." *See id.* at 12. Thomson also seeks an order to show cause as to why a preliminary injunction should not issue, and that the Court set a hearing for a motion for a preliminary injunction. *See id.*

Also on October 30, 2024, Thomson filed a letter from her counsel to the Court, in which Thomson's counsel asserts that Richardson "has used her status as a *pro se* litigant to gain the sympathy of the Court when she needs it but in reality, has been consulting with a high-powered attorney from one of the country's largest law firms for the last two years, throughout the course of this case." *See* ECF No. 83. Thomson filed various exhibits in connection with this letter. *See* ECF Nos. 83-1–83-8.

On October 31, 2024, the Court issued an order setting a deadline of November 4, 2024, for Richardson to file an opposition to the Application. Richardson did not file any opposition by this deadline, and still has not filed any opposition. Thomson filed a Notice of Non-Opposition, which stated that Richardson had failed to file any opposition, on November 13, 2024. *See* ECF No. 86.

## II. Applicable Law

The legal standard for a temporary restraining order is substantially similar to the standard for a preliminary injunction. *See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20 ("*Winter* Test"). Under the "serious question" approach adopted by the Ninth Circuit, "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

There is "strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances" *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). However, an injunction of this nature is an "extreme remedy," and courts should exercise "particular caution" before issuing one. *See id.*

## III. Discussion

The Court finds that Thomson has not shown that a temporary restraining order is warranted based on the evidence in the record. In particular, the Court does not see evidence of sufficiently threatening conduct to justify such an order. For this reason, the Application is DENIED.

1 An order prohibiting a party from harassing another party is appropriate in at least some
2 circumstances. Courts in this district and elsewhere have recognized that it may be permissible and
3 necessary to enjoin a litigant from harassing another party. *See, e.g.*, *Beyond Blond Prods., LLC v.*
4 *Heldman*, Case No. 2:20-cv-05581, 2022 WL 2784404 (C.D. Cal. June 17, 2022) (issuing an
5 injunction against "threatening or harassing emails" and other conduct); *United Artists Corp. v.*
6 *United Artist Studios LLC*, Case No. 2:19-cv-00828, 2019 WL 6917918 (C.D. Cal. Oct. 17, 2019)
7 (issuing an injunction against certain conduct that "constitute[s] harassment and would be performed
8 with the intention of intimidation"); *see also Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559,
9 580 (5th Cir. 2005) (upholding a portion of the district court's injunction prohibiting Defendant
10 "from threatening or harassing" plaintiff, plaintiff's counsel, or other associated individuals). These
11 courts generally recognize that injunctions against harassing conduct are, to some extent, in tension
12 with the First Amendment's protections on free speech, but nevertheless hold that such injunctions
13 are constitutional in some circumstances, as "courts have rejected arguments that the First
14 Amendment allows a person to make harassing or threatening communications." *Beyond Blond*,
15 2022 WL 2784404 at *5; *see also United Artists*, 2019 WL 6917918 at *6 ("even under the First
16 Amendment, courts do have the power to enjoin harassing communication"); *Test Masters*, 428 F.3d
17 at 580 ("Courts have made a distinction between communication and harassment . . . The difference
18 is one between free speech and conduct that may be proscribed."). Although these opinions are not
19 binding, the Court is aware of no precedent pointing the other way on the general question of
20 whether orders of the nature Thomson requested are at times permissible. The Court finds that if
21 Thomson could show sufficient harassment, then it would be appropriate for the Court to grant the
22 Application. But given the Ninth Circuit's guidance cautioning courts regarding injunctions that
23 control litigants' behavior, *see De Long*, 912 F.2d at 1147, and given the First Amendment concerns
24 that such injunctions implicate, the Court will not grant such an injunction absent a strong showing.
25 Here, Thomson has failed to make a sufficient showing to justify the order she seeks. In
26 support of her Application, Thomson points to a number of text messages sent by Richardson on one
27
28

day—October 13, 2024.[2] In her text messages, Richardson threatened to "speak to the press," with "receipts,"[3] which would be a "major liability." *See* ECF No. 82-2. Richardson further wrote "tell your[] lawyers to respond to my requests" and "Please settle this [explicative], or kill me or have me arrested, I'm [explicative] done." *See id.* The messages continued along similar lines. Richardson also sent similar messages to Thomson's daughter. *See* ECF No. 82-3. Thomson notes that these are particularly concerning because from previous conversations, Thomson is aware that Richardson possesses a firearm. *See* ECF No. 82-4.

But Thomson has already obtained a Temporary Restraining Order from the Monterey Superior Court based upon the *same* October 13 conduct. *See* ECF No. 82-6. That order (once properly served) prohibits Richardson from harassing Thomson, contacting her, or attempting to determine her location. *See id.* at 2–5. In addition, the order prohibits Richardson from owning or possessing a firearm and requires her to sell, store, or turn into law enforcement any firearms she possesses. *See id.* at 5. Thomson's Application does not explain why this TRO is insufficient and certainly does not explain how she can meet the requirement of irreparable harm in light of this TRO.[4]

Furthermore, it appears that in her request to the Monterey Superior Court, Thomson requested that the TRO also prohibit contact with her daughter, *see* ECF No. 82-5 at 2, and that request was denied by the court. *See* ECF No. 82-6 at 2. According to the Application, Thomson's daughter now has her own request pending. *See* ECF No. 82 at 6. This Court is reluctant to grant Thomson a form of relief that she can seek from the Superior Court, has sought from the Superior Court, and has not yet been granted. As discussed above, TROs against litigants in federal court are permissible but uncommon. In contrast, the state courts of California are familiar with handling these

---

[2] For the purposes of this Order, the Court will assume that Thomson's descriptions of Thomson's behavior are true. The Court makes no definitive finding on whether the descriptions are actually true.

[3] The Court understands this to be a slang reference to having evidence to back up one's claims, not a literal reference to receipts. The distinction makes no difference as to this Order.

[4] The Court notes that it appears that the Superior Court TRO may have expired as of the date of this Order. The Court's determination is based on the posture of the Application at the time it was filed (when the TRO was still active).

matters and there is a robust body of substantive law and procedural protections in the Superior Court which this Court is reluctant to disturb without good cause. Thomson has failed to show that good cause. Denying this Application is unlikely to cause harm, much less irreparable harm, given the remedies she has available to her in the Superior Court.

Even if the Court was inclined to ignore the Superior Court's TRO and issue its own, these text messages, although not civil, are not threats or harassment that this Court finds sufficient to justify the order Thomson seeks. Richardson has not threatened Thomson with physical violence. Although Richardson threatened to go to the press with evidence, this is significantly distinct, Thomson has provided no authority suggesting a court may enjoin a litigant against making threats to speak to the press, which would likely implicate greater First Amendment concerns than an injunction against threats of physical violence. Richardson's statements that Thomson should settle the case or kill Richardson are disturbing, but they are not threats of violence against Thomson. Furthermore, the record suggests that this conduct was limited to one specific day, and that it is not an ongoing pattern of harassing behavior.

This conduct is significantly distinct from the conduct in the cases discussed above where courts issued injunctions. In *Beyond Blond*, the party seeking the injunction presented evidence that the other party's counsel had sent a series of emails over the course of a month, including insults based on race and other offensive statements, and including statements that there will be a "lifetime war between us" and "I can't wait to meet you in person." *See Beyond Blond*, 2022 WL 2784404 at *2. In *United Artists*, the party seeking the injunction presented evidence that one defendant had engaged in a long pattern of harassing conduct, including an incident at the courthouse, a phone call, a series of emails, and then posts on the internet. *See United Artists*, 2019 WL 6917918 at *3–*4. These incidents—which the defendant did not deny occurred but argued were not harassment— included references to counsel's children and statements like "you've been warned." *See id.* In *Test Masters*, the district court found that defendants had "had called [Plaintiff's office] dozens of times a day, including seventy-one times on one day." *Test Masters*, 428 F.3d at 579. All of these courses of conduct are significantly distinct from the conduct alleged here. Thomson has provided no authority

suggesting that the conduct she alleges—a series of non-civil but not physically threatening text messages, sent on one specific day—is sufficient for an injunction.

In sum, the Court finds that the evidence submitted is not sufficient to grant the Application. Thomson has, at minimum, failed to make a strong showing that she is likely to succeed on the merits as to a permanent injunction, or even raised serious questions, because she has not shown that Richardson's conduct is sufficient to justify the Court enjoining Richardson's speech. *See Winter*, 555 U.S. at 24. Although a temporary restraining order as to harassment by litigants is warranted in some circumstances, the Court will not issue one here.

Finally, the Court notes that although Richardson failed to oppose the Application, and the Court could find that Richardson consented to the Court granting the Application on this basis, the Court is not *required* to grant the Application simply because it is unopposed. *See* C.D. Cal. L.R. 7-12 ("The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion"). The Court declines to do so.

The Court admonishes all parties, including Richardson and Thomson, to be civil in their dealings with one another and the Court. If the Court becomes aware of inappropriate behavior, the Court may sanction a party, or may issue other orders as appropriate.

### IV.  Conclusion

Thomson's Application sought not only a Temporary Restraining Order, but also an Order to Show Cause as to why a Preliminary Injunction Should Not Issue. *See* ECF No. 82. In light of the Court's denial of Thomson's request for a Temporary Restraining Order, an Order to Show Cause shall not issue.

For the reasons stated herein, Thomson's Application for a Temporary Restraining Order is DENIED.

IT IS SO ORDERED.

Dated: December 26, 2024

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge