JULIAN L. ANDRE (251120)
jandre@mwe.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone: (310) 277-4110
Facsimile: (310) 277-4730

JOSEPH B. EVANS (appearing *pro hac vice*)
jbevans@mwe.com
TODD HARRISON (appearing *pro hac vice*)
tdharrison@mwe.com
**MCDERMOTT WILL & SCHULTE LLP**
One Vanderbilt Ave
New York, NY 10017
Telephone: (212) 547-5767
Facsimile: (212) 547-5444

Attorneys for Plaintiff
TAYLOR THOMSON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Taylor Thomson<br><br>          Plaintiff,<br><br>     v.<br><br>Persistence Technologies BVI Pte Ltd., Tushar Aggarwal, Ashley Richardson,<br><br>          Defendants. | Case No. 2:23-cv-04669-MEMF-MAR<br><br>**PLAINTIFF TAYLOR THOMSON'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>The Honorable Maame Ewusi-Mensah Frimpong, United States District Judge<br><br>Date: February 5, 2026<br><br>Time: 10:00 a.m.<br><br>Courtroom: 8B |

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** that on February 5, 2026,[1] at 10:00 a.m., or as soon thereafter as the Court is available, before the Honorable Maame Ewusi-Mensah Frimpong, in Courtroom 8B of the United States District Court, Central District of California, located at 350 W. First Street, 8th Floor, Los Angeles, California 90012, Plaintiff Taylor Thomson ("Plaintiff") will and hereby does move the Court for summary judgment on Defendant Ashley Richardson's ("Defendant") defamation and intentional infliction of emotional distress counterclaims on the grounds that the material facts are undisputed and Plaintiff is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

Plaintiff bases this Motion on this Notice of Motion and Motion for Partial Summary Judgment, the following Memorandum of Points and Authorities in support, the Statement of Uncontroverted Facts and Genuine Disputes, the Declaration of Taylor Thomson, the Declaration of Julian L. André, all the papers and pleadings on file in this action, the oral argument of counsel, and any other matters that may come before this Court.

On November 6, 2025, Plaintiff provided Defendant with an electronic copy of Plaintiff's Motion for Partial Summary Judgment, including the accompanying Statement of Uncontroverted Facts and Genuine Disputes, Evidentiary Appendix, and all supporting exhibits, in accordance with the Court's Civil Standing Order. Pursuant to the Court's briefing schedule, Defendant's response was due within fourteen days, or by November 20, 2025. To date, Defendant has not provided a response. Accordingly, Plaintiff submits this Motion without Defendant's portions or responsive materials.

---

[1] When we wrote to the Court to reserve a hearing date, we requested either January 8, 2026 or February 5, 2026, and the Court reserved the February 5 date.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

Furthermore, Plaintiff's deposition took place on November 7, 2025, the day after Plaintiff provided Defendant with Plaintiffs' portion of the Motion for Partial Summary Judgment and the related materials as required under the Court's Civil Standing Order. Although Plaintiff anticipated addressing the deposition in reply to Defendant's position, Defendant did not provide Plaintiff with her portions or responsive materials. Accordingly, Plaintiff's deposition is not addressed in the Motion for Partial Summary Judgment. In any event, Defendant's questioning rarely touched on issues relevant to this action, and no testimony was elicited that supports any of Defendant's counterclaims in this action.

For the reasons stated above and set forth in the accompanying Memorandum of Points and Authorities, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Partial Summary Judgment.

Dated: November 26, 2025          **MCDERMOTT WILL & SCHULTE LLP**

By:   */s/ Julian L. André*
JULIAN L. ANDRÉ
TODD HARRISON
JOSEPH B. EVANS

Attorneys for Plaintiff
TAYLOR THOMSON

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND ................................................................................... 2

III.    LEGAL STANDARD ............................................................................ 4

IV.     ARGUMENT ......................................................................................... 5

        A.      Defendant's Defamation Counterclaim Fails as a Matter of Law ........... 5

                1.      No Evidence of Any Published, Defamatory, and Unprivileged
                        Statement By Plaintiff ........................................................... 5

                2.      Plaintiff's Alleged Defamatory Statements Are Not False ............ 9

                3.      Defendant has Not Shown any Damages Attributable to
                        Any of Plaintiff's Statements ................................................ 11

        B.      Defendant's IIED Counterclaim Fails as a Matter of Law ................... 13

                1.      Plaintiff's Conduct Was not In Any Way Extreme and
                        Outrageous or Intended to Cause Emotional Distress ................. 13

        C.      Defendant is Not Entitled to Punitive Damages as a Matter of Law ..... 16

V.      CONCLUSION ................................................................................... 18

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:23-cv-04669-MEMF-MAR)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................. 4

*Avalos v. Baca*,
    596 F.3d 583 (9th Cir. 2010) ..................................................... 4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................. 4

*Cochran v. Cochran*,
    65 Cal. App. 4th 488 (1998) ...................................................... 16

*College Hosp., Inc. v. Superior Ct.*,
    8 Cal. 4th 704 (1994) ................................................................ 17

*Heighley v. J.C. Penney Life Ins. Co.*,
    257 F. Supp. 2d 1241 (C.D. Cal. 2003) ...................................... 5

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009) .................................................... 1, 13, 15

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2006) ................................................... 8

*Navellier v. Sletten*,
    262 F.3d 923 (9th Cir. 2001) ..................................................... 12

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ................................................................ 13

*Silberg v. Anderson*,
    50 Cal. 3d 205 (1990) ................................................................ 7

*Smith v. Maldonado*,
    72 Cal. App. 4th 637 (1999) ...................................................... 9

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) ............................................................... 5

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

- ii -

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
   435 F.3d 989 (9th Cir. 2006) ...................................................................................... 9

**Statutes**

Cal. Civ. Code § 47(b) ................................................................................................ 1, 7

Cal. Civ. Code § 3294 .................................................................................................. 17

Cal. Civ. Code § 3294(a) .............................................................................................. 16

Cal. Civ. Code § 3294(c)(1) .......................................................................................... 16

**Other Authorities**

Fed. R. Civ. P. 56(a) .................................................................................................. 1, 4

Fed. R. Civ. P. 56(c)(2) ................................................................................................ 5

Fed. R. Evid. 801(c) ...................................................................................................... 5

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:23-cv-04669-MEMF-MAR)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This motion seeks summary judgment in favor of Plaintiff Taylor Thomson ("Plaintiff") on Defendant Ashley Richardson's ("Defendant") counterclaims for *defamation* and *intentional infliction of emotional distress* ("IIED"). The undisputed record shows that Defendant cannot meet even a single essential element of either tort.

Defendant's defamation counterclaim rests entirely on Defendant's speculation and rumor. She cannot identify any specific statement made by Plaintiff, any witness who heard such a statement, or any document reflecting that a defamatory remark was ever made. (JSUF 1–14.) Her claim is based solely on "information and belief" and alleged anonymous general "reports" from unidentified individuals which do not allege even a single specific defamatory statement. (JSUF 4, 6.) Defendant's testimony and discovery responses show that what she truly complains of are the allegations made in this very lawsuit—that she took an undisclosed finder's fee and conducted unauthorized trades of Plaintiff's cryptocurrency—not any malicious extrajudicial publication by Plaintiff. Those statements are absolutely privileged under California's litigation privilege, Cal. Civ. Code § 47(b), and cannot form the basis of a defamation claim.

Defendant's IIED counterclaim fails for the same reason: there is no evidence of *any* "extreme or outrageous conduct" by Plaintiff. Defendant's own deposition testimony describes a long-standing friendship in which Plaintiff was "wonderful and sweet and loving," not abusive or cruel. (JSUF 52.) Plaintiff's alleged "conduct"—at most consisting of ordinary personal or business discussions and requests—is far from the "intolerable" behavior required for liability under *Hughes v. Pair*, 46 Cal. 4th 1035 (2009). To the contrary, the undisputed facts show Plaintiff was generous and kind to Defendant for years and never intended to cause her distress. (JSUF 52–61.)

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

- 1 -

Because Defendant's counterclaims are unsupported by *any* supporting admissible evidence and contradicted by her own testimony, summary judgment should be granted on both.

## II.  **BACKGROUND**

Plaintiff and Defendant have known each other for more than a decade and maintained a personal friendship throughout that time. (JSUF 51–61.) In her various testimony and filings in this matter Defendant has described Plaintiff as "wonderful and sweet and loving" and testified that when Plaintiff politely made requests of her, she assisted Plaintiff voluntarily. (JSUF 52–53.) Over the course of their friendship, Plaintiff invited Defendant on numerous international trips and paid for her travel expenses, and Defendant occasionally reviewed business or investment proposals for Plaintiff. (JSUF 54–68.) Defendant testified that those requests were not demanding. (JSUF 68.) Plaintiff also occasionally asked Defendant for favors like checking in on her residence in Malibu, to which Defendant agreed and stated she was glad to help. (JSUF 69–76.) During the course of their friendship, which lasted more than a decade, Plaintiff and Defendant exchanged thousands of emails and text messages. None of those communications contained any defamatory, derogatory or emotionally disturbing statements or content.

In 2021, Plaintiff asked Defendant to assist with certain cryptocurrency investments. (JSUF 15.) Defendant did not have a written compensation agreement with Plaintiff. (JSUF 15, 46.) Defendant communicated with Tushar Aggarwal, a representative of Persistence Technologies BVI Pte Ltd. ("Persistence"), about Plaintiff's purchase of a cryptocurrency token called XPRT. (JSUF 17–18.) As part of that transaction, Persistence paid Defendant a finder's fee that Defendant actively concealed from Plaintiff and her attorneys. (JSUF 17–25.) Defendant later prepared a summary of Plaintiff's cryptocurrency holdings for Plaintiff but did not include or disclose the account in which the secret finder's fee was received. (JSUF 26–29.)

McDermott Will &Schulte LLP
Attorneys At Law
Los Angeles

In early 2022, Leih Wang, Plaintiff's financial manager, informed Defendant that he would be assuming administration of Plaintiff's cryptocurrency assets. (JSUF 30–31.) Defendant acknowledged that she no longer had authority to trade Plaintiff's assets after that point but admitted that she continued to conduct transactions in Plaintiff's cryptocurrency assets, including numerous leveraged and futures trades, causing massive losses in Plaintiff's cryptocurrency holdings. (JSUF 31–36.) Defendant testified that the cryptocurrency market later declined, resulting in losses in Plaintiff's portfolio. (JSUF 35–36.)

Defendant testified that she lost her employment when her company closed during the COVID-19 pandemic and that she subsequently performed occasional consulting work but stopped pursuing development projects after the pandemic began. (JSUF 37–41.) She also testified that she has not filed income tax returns since 2020, as she has not had sufficient income from any employment to require her to file income tax returns. (JSUF 44.)

Defendant filed counterclaims for defamation and intentional infliction of emotional distress. In her discovery responses, Defendant stated vaguely and without support that her defamation claim is based on "numerous credible and consistent reports" from unidentified individuals in various industries, refusing to name *any* specific facts regarding even a single alleged defamatory statement. (JSUF 1–3.) She did not identify any person who heard a statement from Plaintiff or produce any written or electronic evidence showing that such statements were made. (JSUF 2–5.) Defendant also acknowledged that she only generally "has reason to believe" that further discovery might reveal supporting evidence. (JSUF 4, 6.)

At her deposition, Defendant testified that Plaintiff allegedly *might* have made defamatory statements to four individuals—Ron Murphy, Kevin Fitzgerald, Rand Rusher, and Catherine Hardwicke—but also testified that these individuals either did not ever tell her Plaintiff had made such statements, that she could not recall if they

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

had, or that her contact with them occurred after this litigation began. (JSUF 8–14.) Nowhere does Defendant ever allege that Plaintiff said anything to anyone other than summarizing the general allegations Plaintiff filed in her Amended Complaint. Nowhere does Defendant allege that Plaintiff made anything other than private statements to individual persons. Nowhere does Defendant allege Plaintiff publicized any allegedly defamatory statement. Nowhere does Defendant tie any alleged statement to any damages suffered by her, either reputationally or financially.

Defendant further testified that she believed that Plaintiff had allegedly made a statement to the *Wall Street Journal* that Defendant "went to the press to get money from [Plaintiff]," but the article in question does not contain any such statement, and Defendant admitted that Plaintiff did not give an interview to the publication. (JSUF 47–50.)

## III.   **LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" only if its resolution could affect the outcome of the suit, and it is "genuine" if the evidence is such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through affirmative evidence or by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Avalos v. Baca*, 596 F.3d 583, 593-94 (9th Cir. 2010). When the burden shifts to the nonmoving party to designate specific facts showing that there is a genuine issue for trial, the nonmoving party cannot rely on "a mere scintilla of evidence" supporting its position but rather must establish that it is able to prove evidence sufficient for a reasonable jury to return a verdict in its favor. *Anderson*, 477 U.S. at 249.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

- 4 -

## IV. <u>ARGUMENT</u>

### A. **Defendant's Defamation Counterclaim Fails as a Matter of Law**

#### 1. **No Evidence of Any Published, Defamatory, and Unprivileged Statement By Plaintiff**

Under California law, the elements of defamation are: "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (citation omitted).

As Plaintiff has asserted from the outset of this case, Defendant has no evidence that Plaintiff published any defamatory statement against Defendant. Defendant has not, and cannot, identify a single speaker, recipient, date, place or words of any specific defamatory statement—much less any piece of admissible evidence to support her defamation claim. (JSUF 1–3, 5.) Rather, Defendant's defamation claim is solely based on her own vague statements that she *thinks* Plaintiff *probably* made defamatory statements and on purported, but completely undocumented and unproven, information allegedly provided to her by third parties, which she has refused to describe or specify. (JSUF 4.)

Defendant's "[d]eclarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment." *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1251 (C.D. Cal. 2003) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). And Defendant's reliance on purported (but completely unspecified) information provided to her by unidentified third parties, would, in any event, be inadmissible hearsay that cannot defeat summary judgment. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 801(c).

During her deposition, Defendant testified that she *believes* that Plaintiff *must have* made defamatory statements to four separate individuals: Ron Murphy, Kevin Fitzgerald, Rand Rusher, and Catherine Hardwicke. (JSUF 8.) Yet, with the exception

McDermott Will &amp; Schulte LLP
Attorneys At Law
Los Angeles

of Hardwicke, Defendant admits that she has not actually been told by those individuals, or anyone for that matter, that Plaintiff actually made any such defamatory statements to those individuals. She is simply speculating. Defendant's own testimony confirms that the named individuals either never told her that Plaintiff made any defamatory statement about her, that she "cannot recall" whether they said such statements were made, or that her contact with them occurred only after this litigation had already begun. (JSUF 9–13.) As to Hardwicke, Defendant testified only that Hardwicke made a vague comment "involving" the idea that Defendant had committed fraud and theft, but she could not recall the specific statement or the context in which it was made. (JSUF 14.) Defendant has not identified a single person who actually heard Plaintiff make a defamatory statement or could testify to the existence of one. She did not produce a single document, recording, email, or text showing Plaintiff said anything defamatory about her at all, much less made it with malice or publicized it in any way. (JSUF 2, 3, 5.)

Defendant's interrogatory responses fare no better. She claims her counterclaim is based on "numerous credible and consistent reports" from unidentified individuals (whom she refuses to name) across several industries. (JSUF 1.) But she concedes she cannot identify any of these people and has no direct evidence of any statement, admitting only that she "has reason to believe" that discovery might someday produce supporting evidence. (JSUF 4, 6.) While Defendant further claims that her "professional and personal network" collapsed because of Plaintiff's alleged statements, she provides no facts, witnesses, or documents linking that alleged harm to anything Plaintiff said, and during her deposition testimony, could not provide even a single example of harm to her reputation or career from any statement by Plaintiff. (JSUF 7, 43.)

Taken together, everything Defendant has offered in support of her defamation counterclaim—her initial counterclaim pleadings, her interrogatory responses, and her

deposition testimony—shows that she is not relying on any independent defamatory statement by Plaintiff at all. Instead, Defendant is merely recharacterizing Plaintiff's lawsuit itself as defamatory. Each iteration of her claim simply echoes Plaintiff's own allegations in this lawsuit that Defendant secretly took an undisclosed finder's fee and engaged in unauthorized trading of Plaintiff's cryptocurrency. Those are the very claims asserted in the operative complaint, not extrajudicial statements made to third parties.

Because Defendant's defamation counterclaim rests entirely on statements made in or directly related to this judicial proceeding, it is barred as a matter of law by California's litigation privilege defined by California Civil Code § 47(b). The privilege applies broadly to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action," including pleadings, filings, and statements made in connection with litigation. *See Silberg v. Anderson*, 50 Cal. 3d 205, 212–13 (1990). Defendant further asserted in her deposition that Plaintiff made a statement to the Wall Street Journal that Defendant "went to the press to get money from [Plaintiff]." (JSUF 47.) That statement is demonstrably false, as the Wall Street Journal article in question does not include any such statement and Defendant admitted in her deposition that Plaintiff did not give an interview to the Wall Street Journal (while at the same time admitting that Defendant herself gave an interview to the Wall Street Journal and produced numerous documents to the Wall Street Journal which she has refused to produce to Plaintiff in this litigation). (JSUF 48–50.)

Furthermore, any statements related to the Wall Street Journal fall well outside the scope of Defendant's pleadings. Defendant's First Amended Counterclaim alleges only that:

3. During the time period of November 2021 until present, Richardson is informed and believes and thereon alleges that Thomson made statements to certain individuals in the Film and Television industry that Richardson had committed fraud and theft with respect to cryptocurrency.

4. . . . Richardson is further informed and believes that Thomson made statements to individuals within Richardson's and Thomson's shared social circle that Richardson had committed Fraud and Theft of cryptocurrency.

5. . . . Richardson is further informed and believes that Thomson made statements to individuals within Cryptocurrency and Financial Sectors that Richardson had committed Fraud and Theft of cryptocurrency.

(Dkt. 58 ¶¶ 3–5.) Defendant's counterclaims merely restate, in vague and ambiguous terms, the general allegations in Plaintiff's Amended Complaint, without identifying what specific statements or conduct they are based on.

In any event, the alleged statement to the Wall Street Journal—that Defendant sought to use the press to extract money from Plaintiff—does not fall within any of these allegations. It did not occur during the alleged period of "November 2021 through present" (or through February 2, 2024, when the First Amended Counterclaim was filed); it was not made to anyone in the film, television, cryptocurrency or financial sectors, or in the parties' shared social circle; and it does not concern allegations of fraud or theft.

Defendant cannot use discovery or deposition testimony to expand the scope of her defamation claim beyond what she actually pled. It is well established that a party may not effectively amend a pleading through discovery responses or argument at summary judgment. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2006) (A party "may not effectively amend its Complaint by raising a new theory . . . in its response to a motion for summary

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

judgment."); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("The necessary factual averments are required with respect to each material element of the underlying legal theory. Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (citation and alterations omitted). Because Defendant's counterclaim does not allege any statement relating to the Wall Street Journal, any such purported statement is irrelevant and cannot create a triable issue of fact.

### 2.    Plaintiff's Alleged Defamatory Statements Are Not False

Furthermore, assuming *in arguendo* that Defendant has provided sufficient evidence that Plaintiff made defamatory statements—which Defendant clearly has not—the uncontroverted record shows that the alleged statements are true. "In all cases of alleged defamation, whether libel or slander, the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 646 (1999). Here, Defendant's own deposition testimony and the evidence on the record shows that the statements she alleges are defamatory—that Defendant committed fraud and theft in connection with Plaintiff's cryptocurrency, that Defendant conspired to defraud Plaintiff, and that Defendant caused Plaintiff financial losses—are true.

Defendant managed Plaintiff's cryptocurrency, including making numerous trades on behalf of Plaintiff and negotiating Plaintiff's purchase of the cryptocurrency XPRT from Persistence Technologies BVI Pte Ltd. ("Persistence") (JSUF 15, 18, 30–32.) In her discussions with Tushar Aggarwal of Persistence, Defendant negotiated a purchase price of $4.94 per XPRT, with $5.00 charged to the Plaintiff and "the remaining $0.06 as a finders fee" to be paid to the Defendant (JSUF 16-18.) Aggarwal agreed to pay that fee directly to Defendant in the form of XPRT to Defendant's XPRT wallet address. (JSUF 19–20.)

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

On August 25, 2021, Plaintiff and Persistence entered into a Token Sale Agreement by which Plaintiff would purchase 4,000,000 XPRT for a total price of $20,000,000, or $5 per XPRT. (JSUF 21-22.)

On August 26, 2021, Defendant caused Plaintiff to purchase 3 million XPRT for 326.09 Bitcoin from Persistence in 5 separate transactions. (JSUF 26.) In return Persistence sent Defendant 36,437.25 XPRT to her personal XPRT wallet address. (JSUF 27.)

Defendant never disclosed this finder's fee to Plaintiff and, in fact, concealed its existence. Defendant herself testified that the finder's fee was not disclosed in any of her numerous written communications with Plaintiff regarding cryptocurrency, Persistence and XPRT, nor did she tell the Plaintiff's attorneys who negotiated the contract between Plaintiff and Persistence, whom she oversaw on Plaintiff's behalf. (JSUF 23–24.) Defendant, in fact, told Persistence that the finder's fee did "not need to be spelled out in the" purchase contract. (JSUF 25.) Nor did Defendant disclose the fee or the XPRT wallet address the fee was sent to in a July 25, 2022 overview of Plaintiff's cryptocurrency assets. (JSUF 27–28.) Thus, Defendant fraudulently concealed the fact that Plaintiff's purchase price of $5 was not the true purchase price from Persistence, but actually included a $0.06 finder's fee paid directly to Defendant.

Furthermore, a statement that Defendant stole from Plaintiff and caused Plaintiff financial losses is also true. On March 25, 2022, Plaintiff's financial manager Leih Wang informed Defendant that he would be taking over administration of Plaintiff's cryptocurrency assets. (JSUF 30.) Defendant testified that she understood that once she received that notice that she no longer had authority to trade Plaintiff's assets. (JSUF 31.) Nevertheless, Defendant testified that she continued to make additional trades, including highly risky futures and leveraged trades without Plaintiff's authorization, which trades caused significant losses. (JSUF 32–33, 36.)

One of these trades included staking 6 million ATOM and 2 million ETH with Persistence. (JSUF 34.) On April 13, 2022, Defendant told the CEO of Persistence that she was "trying to get as much done as [she could] before [she had] to pass the baton," that it was "best to take advantage ;)" and "gift" the staked ATOM and ETH to Persistence "while [she could still] give." (*Id.*) Further, the market subsequently crashed, causing significant losses to Plaintiff's assets managed by defendant. (JSUF 35.) These losses were compounded by a significant number of margin and leverage trades Defendant made in an unauthorized "attempt[] to hedge losses." (JSUF 36.)

Therefore, any alleged statement (although still not specified by Defendant) by Plaintiff that Defendant committed fraud, theft of her assets, or caused Plaintiff financial losses——is true, and Defendant cannot establish her defamation claim as a matter of law.

### 3.    Defendant has Not Shown any Damages Attributable to Any of Plaintiff's Statements

Finally, Defendant's defamation claim fails as a matter of law because she has not shown any damages whatsoever which are attributable to any defamatory statement by Plaintiff. The record clearly establishes that Defendant's loss of employment and income stemmed from external economic factors, not from anything Plaintiff said. In addition, Defendant has not brought forth even a single shred of evidence that she incurred any financial or reputational losses from anything Plaintiff has ever said. Defendant admitted that she lost her only steady job when the company she worked for closed during the COVID-19 pandemic. (JSUF 37–38.) She also acknowledged performing only "sporadic" consulting work and that she stopped participating in the development projects she previously worked on after COVID disrupted her industry. (JSUF 39–41.) Defendant admitted that she did not lose work,

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

clients, or career opportunities because of any alleged statement by Plaintiff; she lost them because COVID decimated her professional field. (*Id.*)

Defendant's unspecified damages, which are completely untethered from any statements made by Plaintiff, are too speculative to survive summary judgment. *See Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001) (affirming summary judgment where asserted damages were "too speculative," noting that "damages which are speculative, remote, imaginary, contingent or merely possible cannot serve as a legal basis for recovery") (cleaned up). Defendant herself admitted that "[t]here's no way of knowing" whether the development projects she once pursued would have succeeded or become profitable even if she had continued working on them (which she admits that she did not, due to the intervention of COVID). (JSUF 42.) She could not specifically identify a single opportunity, job, or project that she lost due to anything Plaintiff allegedly said. (JSUF 34.)

Defendant has produced no financial records, client correspondence, or other documentation substantiating any actual or special damages. She further admitted that she has not filed income tax returns since 2020—long before she began managing Plaintiff's cryptocurrency in late 2021—confirming that she lacked sufficient income to file a tax return or stable employment during the period at issue, and cannot prove any economic damages in any event. (JSUF 44.)

In short, Defendant cannot establish that she suffered any compensable harm, let alone harm caused by Plaintiff's statements. Without competent evidence of actual damages, her defamation claim cannot survive summary judgment and should be dismissed as a matter of law.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

**B.     Defendant's IIED Counterclaim Fails as a Matter of Law**

**1.     Plaintiff's Conduct Was not In Any Way Extreme and Outrageous or Intended to Cause Emotional Distress**

The elements of the tort of IIED are: (1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress caused by the defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). "'Severe emotional distress' means emotional distress of such substantial quality or enduring quality that no reasonable person in a civilized society should be expected to endure it." *Hughes*, 46 Cal. 4th at 1051; *Potter*, 6 Cal. 4th at 1004. Conduct is "extreme and outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. 4th at 1050; *Potter*, 6 Cal. 4th at 1001. Evidence that reflects "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" is insufficient. *Hughes*, 46 Cal. 4th at 1051.

Defendant has not introduced any evidence that Plaintiff engaged in any action that could even remotely be described as extreme or outrageous conduct. To the contrary, Defendant's own testimony describes an amicable friendship spanning more than a decade—not conduct that even approaches the threshold required for IIED. Defendant testified that, apart from a single incident in 2012 (thirteen years ago) which Plaintiff "screamed and yelled" about a hotel booking, Plaintiff "was, by and large, during the course of our friendship, wonderful and sweet and loving." (JSUF 51–52.) She further testified that she always assisted Plaintiff voluntarily and out of friendship, not obligation. (JSUF 53.)

The evidence shows that Plaintiff was generous and supportive of Defendant throughout their friendship. Plaintiff paid for multiple vacations Defendant attended,

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

including trips to Italy (2013, 2014, and 2020), Coachella (2016), Jamaica (2017), the Bahamas (2020), Mexico (2021), and France (2021). (JSUF 54–61.) Defendant never testified that Plaintiff mistreated her on these trips or subjected her to any emotional abuse. Rather, her own words paint a picture of mutual trust and kindness inconsistent with any claim of outrageous conduct.

Defendant also described how Plaintiff occasionally asked her to review business proposals and investment opportunities—a task Defendant admitted was not extreme or burdensome. (JSUF 62–68.) Defendant evaluated proposals from companies including CutShelf, REX, Demian Dressler, Rossano Ferretti, and Stitch Labs, but testified that these requests were limited in number and not unreasonable. (JSUF 62–67.) She expressly admitted that reviewing these plans "was not an extreme demand." (JSUF 68.) Defendant further testified that she managed Plaintiff's cryptocurrency voluntarily, that she was not Plaintiff's employee, and "never wanted to be a paid employee of [Plaintiff's] even though it was "taking all of [her] time." (JSUF 45 ["[Q.] [Y]ou were voluntarily managing Taylor Thomson's cryptocurrency, correct? No one forced you to do it, right? A. Yes."], 46.) Defendant also confirmed during her deposition that she could decline Plaintiff's requests, including declining to pick Plaintiff up from a hyperbaric session or to join certain trips. (JSUF 77 ["Q. But you did have the ability to say no. And, in fact, you did for the hypberbaric driving thing. You said no. They asked you to pick her up -- A. I had to work. Q. -- and you said -- okay. So you said no? A. I said no to yacht trips because I had to work. A. . . . I really did have a job."].) Defendant also admitted that Plaintiff never prevented her from taking other job opportunities to manage Plaintiff's cryptocurrency. (JSUF 84 ["Q. . . . She asked you to manager her crypto -- or allowed you to manage her crypto, but she never told you not to take any specific opportunities, right? A. She didn't tell me."].)

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

The same is true for Plaintiff's personal requests. Defendant testified that Plaintiff once asked her to check on and tidy a closet in Plaintiff's house. (JSUF 69–70.) Defendant responded enthusiastically, stating she was "[h]appy to do a quick walk through" and later joked that she was "fully staging the entire house 😂 Don't worry—it's gonna be amazing." (JSUF 71–73.) Defendant even offered to help organize Plaintiff's closet "anytime," affirming that she and her partner were "so easy and not at all offended." (JSUF 74.) Defendant also testified that she and her partner helped Plaintiff stage a house and take photos for a real estate listing as well as accepted packages at her home for Plaintiff's daughter (though this request does not appear to have come from Plaintiff herself). (JSUF 75–76.) These voluntary acts of assistance hardly qualify as "outrageous" or "intolerable in a civilized community." *Hughes*, 46 Cal. 4th at 1050.

Nor is there evidence that Plaintiff acted with any intent to cause emotional distress. To the contrary, Defendant herself repeatedly characterized Plaintiff as "wonderful and sweet," undercutting any suggestion of malicious intent. (JSUF 52.)

Even Defendant's own conduct during and after the deterioration of their relationship underscores the absence of outrageousness on Plaintiff's part, and the presence of malice and intent on *Defendant's* part to cause emotional distress *to Plaintiff*. On October 13, 2024, during the pendency of this litigation, and after she had already been warned not to contact Plaintiff directly, Defendant sent a series of aggressive, violent and profanity-laden text messages to Plaintiff, stating: "Please settle this shit, or kill me or have me arrested, I'm fucking done," "Send someone over with a fucking gun before I speak to the press. . . . I have the fucking receipts," and "you narcissistic sociopathic fucking cunt!" (JSUF 78–80.) Defendant admits that these texts are "insanely disturbing." (JSUF 82.) Plaintiff did not respond to any of these messages, but they did cause Plaintiff emotional distress. (JSUF 81.)

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

The undisputed record establishes that Plaintiff treated Defendant kindly for years, never threatened or humiliated her, and, at most, made purely ordinary requests of her friend the Defendant which Defendant repeatedly stated she was happy to engage in. Defendant admits that throughout her entire relationship with Plaintiff, Plaintiff has never sent any threatening or otherwise disturbing messages to her. (JSUF 83.) Such conduct falls well short of the "extreme and outrageous" standard required under California law. *See Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998) (Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.") (internal citations and quotation markets omitted).

Finally, the record reflects that Plaintiff never concealed her intentions or engaged in deceitful or cruel behavior; rather, it was Defendant who concealed the undisclosed finder's fee and engaged in unauthorized cryptocurrency trades without Plaintiff's consent. (JSUF 17–36.) Far from acting outrageously, Plaintiff's actions—filing suit to recover her losses—were a legitimate exercise of her legal rights.

In sum, Defendant's own testimony and documentary evidence confirm that Plaintiff's conduct was generous, amicable, and at times entirely deferential. No reasonable jury could find that Plaintiff's actions were "so extreme as to exceed all bounds of decency." Defendant's IIED claim therefore fails as a matter of law.

## C.    Defendant is Not Entitled to Punitive Damages as a Matter of Law

Defendant's demand for punitive damages fails as a matter of law. Under California Civil Code § 3294(a), punitive damages are available only where the plaintiff proves by clear and convincing evidence that the defendant acted with oppression, fraud, or malice. "Malice" in this context means conduct "intended by the defendant to cause injury to the plaintiff or despicable conduct carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "Oppression" and "fraud" likewise require proof of despicable

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

conduct—something base, vile, or contemptible. *See College Hosp., Inc. v. Superior Ct.*, 8 Cal. 4th 704, 721 (1994) ("Each involves 'intentional,' 'willful,' or 'conscious' wrongdoing of a 'despicable' or 'injur[ious]' nature."). Absent such evidence, punitive damages cannot stand.

Here, Defendant has presented no evidence at all that Plaintiff acted with malice, oppression, or fraud. Defendant's defamation counterclaim—already unsupported by proof of any defamatory publication—contains no factual allegations or record evidence suggesting that Plaintiff intended to injure her in any way. Defendant could not identify a single statement by Plaintiff, much less one made maliciously or with conscious disregard for her rights. (JSUF 1–15.) This is plainly insufficient to meet the high clear-and-convincing standard for punitive damages.

The undisputed record instead shows that Plaintiff never intended to cause Defendant harm and at all times acted in good faith. Plaintiff and Defendant shared a long and trusted friendship, which Defendant herself described as one in which Plaintiff was "wonderful and sweet and loving." (JSUF 52.) Defendant testified that she voluntarily assisted Plaintiff, was never her employee, and was free to decline requests—including declining to pick Plaintiff up from a hyperbaric session or join certain trips. (JSUF 45–46, 53, 77.) These facts preclude any finding of the "malice" or "despicable conduct" required under § 3294.

Defendant has not identified a single act by Plaintiff that could be characterized as malicious or oppressive. Plaintiff filed this lawsuit to recover her own financial losses, a lawful exercise of her rights. (JSUF 17–36.) The only evidence of actual malice or threatening conduct in the record comes from Defendant herself: the violent and profane messages she sent to Plaintiff on October 13, 2024. (JSUF 78–80.) These facts underscore the absence of any wrongful intent by Plaintiff and the impropriety of any punitive award against her.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

Because Defendant has no evidence that Plaintiff acted with malice, oppression, or fraud, and because her substantive claims fail as a matter of law, her request for punitive damages should also be summarily rejected.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that summary judgment be granted in her favor.

Dated: November 26, 2025          **MCDERMOTT WILL & SCHULTE LLP**


                                By:    */s/ Julian L. André*
                                       JULIAN L. ANDRE
                                       TODD HARRISON
                                       JOSEPH B. EVANS

                                       Attorneys for Plaintiff
                                       TAYLOR THOMSON

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:23-cv-04669-MEMF-MAR)

## PROOF OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in Los Angeles, California. My business address is McDermott Will & Schulte, LLP, 2049 Century Park East, Suite 3200, Los Angeles, CA 90067. I am over the age of eighteen years and not a party to this action.

On November 26, 2025, I caused to be served copies of the following documents:

**PLAINTIFF TAYLOR THOMSON'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JULIAN L. ANDRE; STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES; EVIDENTIARY APPENDIX AND SUPPORTING EXHIBITS**

on the following party via email and U.S. Mail:

Ashley Richardson                              *Defendant in Pro Per*
25399 Markham Lane
Salinas, CA 93908
ashrichardson@mac.com


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on November 26, 2025 in Los Angeles, California.

*/s/ Joshua C. Yim*
Joshua C. Yim

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

- 19 -