JULIAN L. ANDRÉ (251120)
JAndre@mwe.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone:     +1 310 277 4110
Facsimile:     +1 310 277 4730

JOSEPH B. EVANS (appearing *pro hac vice*)
jbevans@mwe.com
TODD HARRISON (appearing *pro hac vice*)
tdharrison@mwe.com
**MCDERMOTT WILL & SCHULTE LLP**
One Vanderbilt Ave
New York, NY 10017
Telephone: (212) 547-5767
Facsimile: (212) 547-5444

Attorneys for Plaintiff
TAYLOR THOMSON

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Taylor Thomson<br>             Plaintiff,<br>     v.<br>Persistence Technologies BVI Pte Ltd., Tushar Aggarwal, Ashley Richardson,<br>             Defendants. | Case No. 2:23-cv-04669-MEMF-MAR<br><br>**PLAINTIFF TAYLOR THOMSON'S OPPOSITION TO DEFENDANT'S EX PARTE MOTION TO STRIKE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

**PAGE**

I.   Introduction ..................................................................................................................1

II.  Defendant's Improper Resort to Ex Parte Procedure ...............................................2

    A.    The high standard for *ex parte* relief ..............................................................2
    B.    Defendant sat on the alleged issues and now seeks an improper second round of briefing ...........................................................................................4

III. Defendant's Filing Continues a Longstanding Pattern of Procedural Non-compliance ............5

IV. Plaintiff Properly Requested a Hearing Date and Complied with the Court's Calendaring Process ..................................................................................................7

V.  Defendant's Narrative is False and Does Not Support Any Claim of Prejudice .......................9

    A.    Defendant's claim that she was deprived of the opportunity to file her own motion for summary judgment is not credible ............................................................9
    B.    Defendant's claim of prejudice to the mediation is incoherent and unsupported ........10
    C.    Plaintiff properly noticed Defendant's deposition; Defendant refused to appear ........11

VI. Conclusion ................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Intermagnetics Am., Inc.*,
   101 B.R. 191 (C.D. Cal. 1989) .................................................................................2,3

*Mission Power Engineering Co. v. Continental Casualty Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) .............................................................................2,3

*Horne v. Wells Fargo Bank, N.A.*,
   969 F. Supp. 2d 1203 (C.D. Cal. 2013) ........................................................................3

*Lenahan v. Target Corp.*,
   2022 WL 2102892 (C.D. Cal. Mar. 17, 2022) ..............................................................3

**Other Authorities**

Local Rule 7-19...............................................................................................................6

## I. INTRODUCTION

Unable to present any evidence to support her frivolous counterclaims in response to Plaintiff Taylor Thomson's Motion for Partial Summary Judgment ("MSJ"), Defendant Ashley Richardson has now filed an emergency *ex parte* application requesting that the Court strike Plaintiff's MSJ altogether. Defendant's improper *ex parte* application should be denied for at least four independent reasons, and the Court should resolve Plaintiff's MSJ on the merits.

*First*, Defendant's motion is not a proper *ex parte* application at all. And there certainly is not an emergency. Plaintiff provided Defendant with her MSJ papers over two months ago on November 6. (Dkt 144-2.) Three weeks later, on November 26, having received no response *at all* from Defendant (much less her Opposition within 14 days, as required under the Court's Standing Order), Plaintiff filed her MSJ with the Court. On December 10, 2025 (20 days late), Defendant filed an extensive Opposition supported by two declarations. (Dkt 149.) Since then, nothing has changed. Defendant's *ex parte* motion identifies no new facts, no intervening orders, and no imminent harm. Instead, she repackages the same procedural arguments which were already incorporated into her prior filings—including her untimely Opposition. Defendant is simply attempting to obtain an unauthorized sur-reply after filing an untimely Opposition, and to do so by invoking *ex parte* procedure late on a Friday night.

*Second*, the motion fits a pattern in this case: Defendant repeatedly ignores the rules and deadlines when it benefits her only to later accuse Plaintiff of the very same procedural impropriety when faced with an adverse merits record. Defendant cannot have it both ways. The Court has previously rejected similar tactics by Defendant, including numerous improper *ex parte* filings and procedurally defective discovery motions. The Court should do so again here.

*Third*, the fundamental factual premise of Defendant's motion is wrong. Plaintiff did not "unilaterally" select a post-cutoff hearing date. Plaintiff requested available hearing dates through the Court's calendaring process and was provided February 5. Plaintiff noticed the MSJ for the date assigned. In those circumstances, there is no good reason to strike a dispositive motion, much less to do so after it has already been fully briefed.

*Fourth*, Defendant's claims of prejudice if Plaintiff's MSJ is not struck are predicated on a narrative that is false and omits critical facts. Plaintiff never refused to appear for a deposition;

- 1 -

Defendant did—repeatedly conditioning her own appearance on improper and shifting demands, and ultimately simply refusing at the eleventh hour to attend a properly noticed deposition. Having created the very delays about which she now complains, Defendant cannot credibly claim prejudice, and the Court should not entertain her attempt to invoke those delays as a basis to strike Plaintiff's MSJ. Indeed, hearing the MSJ (which is already fully briefed despite Defendant's untimely Opposition) on the currently noticed and reserved February 5 hearing date will have no impact on the trial date or any other existing case deadlines.

Distilled, Defendant's filing is best understood as an attempt to avoid a merits adjudication. As Plaintiff's MSJ demonstrates, Defendant lacks, as she always has, any evidence to support her counterclaims. Defendant is now attempting to obscure that gross deficiency with a contrived procedural "emergency" in an effort to forestall an unfavorable merits determination. Even accepting Defendant's arguments *arguendo*, striking the Plaintiff's MSJ—a fully briefed dispositive motion— is a disproportionate remedy that would elevate form over substance and would reward Defendant's (repeated) misuse of *ex parte* procedure.

## II.     DEFENDANT'S IMPROPER RESORT TO EX PARTE PROCEDURE

### A.     The high standard for *ex parte* relief

*Ex parte* procedure is not a vehicle to evade briefing limits, revive waived arguments, or obtain an extra round of advocacy. Courts in this District have repeatedly emphasized that *ex parte* applications are "nearly always improper," *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 192 (C.D. Cal. 1989), and "rarely justified," *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 491 (C.D. Cal. 1995). As the *Intermagnetics* court explained, *ex parte* practice:

> [c]ontravene[s] the structure and spirit of the Federal Rules of Civil Procedure and the Local Rules of this court. Both contemplate that noticed motions should be the rule and not the exception. Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes.

*Intermagnetics*, 101 B.R. at 193 (citations omitted).

In contrast, *ex parte* applications "throw the system out of whack," impose unnecessary burdens on both the court and opposing counsel, and "put the applicant 'ahead of the pack,' without cause or justification," which priority consideration "is seldom deserved." *Id*. Accordingly, to be proper, an *ex*

- 2 -

*parte* motion must show good cause for allowing the moving party to "go to the head of the line in front of all other litigants and receive special treatment." *Mission Power*, 883 F. Supp. at 492 (". . . filing an ex parte motion . . . is the forensic equivalent of standing in a crowded theater and shouting, "Fire!" There had better be a fire.").

In this District, such relief "is justified only when (i) there is a threat of immediate or irreparable injury; (ii) there is danger that notice to the other party may result in the destruction of evidence or the party's flight; or (iii) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion (i.e., to file an overlong brief or shorten the time within which a motion may be brought)." *Horne v. Wells Fargo Bank*, N.A., 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013) (citing *Intermagnetics*, 101 B.R. at 193).

There is plainly no imminent threat of harm and Defendant does not even attempt to allege otherwise. Instead, the apparent basis for the *ex parte* nature of Defendant's motion rests entirely on her assertion that the relief sought cannot be obtained through ordinary motion practice. Courts in this District have repeatedly made clear that *ex parte* applications are strongly disfavored, and that mere unfavorable timing—standing alone—does not justify departure from the normal process. Rather, Defendant can only obtain *ex parte* relief where she shows that she "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and that she is "without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power*, 883 F. Supp. at 492. *See also Lenahan v. Target Corp.*, 2022 WL 2102892, *1 (C.D. Cal. Mar. 17, 2022).

As we explain below, Defendant has not come close to meeting this exacting standard:

(a) As a threshold matter, all of the issues identified in Defendant's *ex parte* application could and should have been raised over two months ago, in November 2025, when Plaintiff first sent Defendant the MSJ papers. There is no reason why these issues could not have been raised in Defendant's Opposition or in a properly-noticed motion weeks ago. Defendant's *ex parte* application exemplifies the type of improper and abusive use of *ex parte* procedure that courts in this District have repeatedly cautioned against, and her failure to identify any exigent circumstances is fatal.

///

(b) Additionally, and as more fully explained in Section V, Defendant has not suffered any prejudice and will not suffer any prejudice if Plaintiff's MSJ is heard as scheduled, and, in any event, the circumstances out of which her claimed prejudice arise are wholly of her own making.

### B. Defendant sat on the alleged issues and now seeks an improper second round of briefing

This *ex parte* application is nothing more than a transparent repackaging of arguments Defendant has already made (multiple times) in an attempt to secure yet another bite at the apple. Every factual assertion and legal argument advanced in the *ex parte* application was known to Defendant well before it was filed and has been available to her for weeks, if not months. There is nothing new, emergent, or unforeseen about any aspect of Defendant's submission.

Indeed, Defendant previously advanced many of these same arguments in her untimely Opposition to Plaintiff's Motion for Summary Judgment, filed on December 10, 2025. Those arguments included, among other things: (i) Defendant's misguided complaints regarding Plaintiff's purported noncompliance with the Local Rules, even though Defendant's current *ex parte* application confirms that further efforts to confer with Defendant, who has repeatedly violated those rules herself, would in fact have been futile; and (ii) Defendant's recycled and blatantly false narrative concerning depositions and discovery, including her assertion of "structural, irreparable prejudice,"[1] which remains entirely unsupported by the record. Defendant's *ex parte* application does not meaningfully expand on these points; it merely restates them under a different procedural heading.

The procedural history underscores the abusive nature of Defendant's tactics. On December 17, 2025, Plaintiff filed her Reply in support of her MSJ. The following day, Defendant emailed Plaintiff's counsel announcing her purported intent to seek leave to file a *sur-reply*, without offering any explanation as to why a sur-reply was warranted or identifying any new issue that could not have been addressed in her Opposition. (Ex. B.) Defendant never pursued a proper request for leave to file a sur-reply—presumably because she recognized that she had no basis on which to make it. Instead, after waiting more than three weeks, Defendant filed the present *ex parte* motion late on Friday, January 10,

---

[1] See, for example, Defendant's stricken *ex parte* application made on October 10, 2025 (Dkt. 121.)

- 4 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S EX PARTE MOTION TO STRIKE
(No. 2:23-cv-04669-MEMF-MAR)

1  2026, reasserting substantially the same grievances previously raised in her Opposition (and which had
2  been raised in, among other things, her (improper) motions to compel deposition and requests for
3  sanctions (filed in *February 2025, July 2025,* and as recently as October 2025) (Dkt. 89, 96, and 133,
4  respectively)), now thinly and suddenly recast as an "emergency."

5      This maneuver should be recognized for what it is: an improper attempt to obtain an
6  unauthorized extra round of advocacy by affixing an "*ex parte*" label to arguments the Court has already
7  received. *Ex parte* procedure is an extraordinary process, not a fallback mechanism for litigants
8  dissatisfied with how their cards have fallen. Defendant's application is procedurally abusive and
9  utterly devoid of exigent circumstances. It should be denied in its entirety for this reason alone.

10 **III.  DEFENDANT'S FILING CONTINUES A LONGSTANDING PATTERN OF**
11     **PROCEDURAL NON-COMPLIANCE**

12     This filing follows a long pattern in which Defendant disregards procedural rules when it
13 benefits her and then invokes procedure as a weapon when it does not, and refuses to engage
14 constructively. By way of example:

15     (a)    *Prior defective motions and improper ex parte filings*. Defendant filed multiple
16 improper *ex parte* motions which have been stricken by the court on the bases that they failed to comply
17 with the Local Rules, were unsupported, and/or were untimely. (Dkt 89 and 91; Dkt 133 and 143.)
18 Other filings have similarly failed to comply with applicable rules, though no action was taken by the
19 Court against them. (Dkt 96.)

20     (b)    *Disregard of Local Rules*. Defendant's failures to comply with her procedural
21 obligations have not been technicalities. Instead, she has demonstrated flagrant disregard for clear rules
22 that are intended to ensure that this case proceeds efficiently and without unnecessarily burdening this
23 Court. The MSJ briefing is an apt example: on November 6, 2025, Plaintiff provided Defendant with
24 her draft MSJ, and requested that Defendant provide her response within two weeks, as required by the
25 Court's Standing Order. Defendant did not respond within the 14 days required by IX.D of the Court's
26 Standing Order (or at all), forcing Plaintiff to file the MSJ without Defendant's Opposition sections
27 integrated (as is required by the Court's Standing Order). (Dkt 144-1.) When Defendant eventually
28 filed her Opposition, she failed to respond point-by-point to the MSJ, instead adopting her own

- 5 -

confused and idiosyncratic format and raising all manner of irrelevant issues. So too her response to the Statement of Uncontroverted Facts and Genuine disputes. To ensure the Court has a usable record, Plaintiff was forced to respond to Defendant's nonconforming papers in a manner not contemplated by the Court's Standing Order and which could have been readily avoided had Defendant properly and timely engaged in the briefing process, as she is required to do.

(c)     *Disregard of requirement to meet and confer*. Defendant has repeatedly failed to meet and confer—the same complaint Defendant now levies at Plaintiff—and to engage constructively to resolve the dispute. By way of indicative example,[2] recognizing that both parties would potentially need to disclose sensitive financial and other information since early on in these proceedings, Plaintiff repeatedly requested that the parties stipulate to a protective order. Defendant flatly refused. Most recently, Plaintiff again attempted to confer with Defendant in good faith regarding a stipulated protective order, and following a meet and confer on October 7, 2025 during which Defendant specifically stated she *would* be interested in agreeing to a protective order (Dkt 148-3, ¶7(e)), Plaintiff circulated a draft joint stipulation (based on the court's sample). Defendant did not respond and instead, three days later and without notice to Plaintiff, filed an *ex parte* application seeking, among other things, her own, one-sided protective order. (Dkt. 121). L.R. 7-19.1 requires that a party filing an *ex parte* application "make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application" and advise the Court, under oath, of those efforts. Defendant did neither. Defendant's subsequent conduct only underscores that obstreperousness. In that same *ex parte* application (Dkt. 121), Defendant also requested an extension to discovery deadlines. Plaintiff stated to Defendant that Plaintiff would stipulate to extensions and proposed a revised timetable—it plainly being unworkable to extend the deadline only in respect of a single deposition as Defendant demanded—acceptance of which would have avoided precisely the issues that served as the predicate for Defendant's own *ex parte* application and about which Defendant now complains. Defendant refused that proposal and offered no workable alternative, which refusal she quickly followed up with the perplexing and completely unfounded accusation that Plaintiff's counsel

---

[2] Further examples have been detailed extensively in Plaintiff's prior filings. *See*, in particular, Dkt 127-1, 134-1, and 148-3.

- 6 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S EX PARTE MOTION TO STRIKE
(No. 2:23-cv-04669-MEMF-MAR)

1  were trying to "trick" her. (Dkt 126-2.) Defendant then proceeded to file yet another improper *ex parte*
2  application for terminating sanctions just a few days later, which was again subsequently denied. (Dkt
3  133.)

4      This context matters. A party who has repeatedly disregarded the Court's rules is not entitled to
5  extraordinary relief on an *ex parte* basis, particularly where there is no basis for such relief. Plaintiff
6  has repeatedly attempted to work with Defendant in good faith to ensure that this case proceeds in a
7  timely and efficient manner, to no avail. Defendant should not be permitted to use a mess that she
8  herself created to obtain extraordinary relief and avoid a merits determination of counterclaims for
9  which she has presented no supporting evidence.

10 **IV.  PLAINTIFF PROPERLY REQUESTED A HEARING DATE AND COMPLIED WITH**
11      **THE COURT'S CALENDARING PROCESS**

12     Defendant's central premise—that Plaintiff noticed her MSJ for a date the Court lacked
13 authority to provide and that only became clear after Defendant filed her Opposition—is factually
14 incorrect.

15     Plaintiff did not seek to modify the Scheduling Order (Dkt 95) by stealth. Nor did Plaintiff
16 unilaterally select a date that fell outside the limits provided by the Scheduling Order. Quite the
17 opposite: Plaintiff followed the instructions provided by the Court and relied on the date she was
18 assigned (and, as Defendant herself notes, this was explained to Defendant before she filed the instant
19 *ex parte* application). (Richardson Decl. ¶6 and Ex A thereto.) Specifically:

20     (a)    As noted above, on October 10, 2025, Defendant filed an improper *ex parte* application
21 seeking sanctions and an extension of the discovery deadlines. (Dkt 121.)

22     (b)    Although Plaintiff opposed the motion (Dkt 123), she offered to stipulate to modest
23 continuation of the deadlines for *both* parties so that discovery and depositions could be completed.
24 (Dkt 123.) While such a stipulation would have afforded Defendant the very relief she had (improperly)
25 sought days earlier, on the eve of the existing deadline (October 15) she refused, forcing Plaintiff to
26 file an *ex parte* application to continue the discovery deadlines (the "Continuation Application"). (Dkt
27 126.) In order to facilitate the extension, the Continuation Application proposed moving the other
28 corresponding deadlines.

- 7 -
PLAINTIFF'S OPPOSITION TO DEFENDANT'S EX PARTE MOTION TO STRIKE
(No. 2:23-cv-04669-MEMF-MAR)

(c) On November 6, while the Continuation Application was still pending, Plaintiff requested a hearing date for Plaintiff's MSJ from the Court's Deputy Clerk. In that request, Plaintiff noted that her Continuation Application was still pending and therefore requested *both* January 8 and February 5. The CRD reserved February 5, and Plaintiff then noticed her MSJ in reliance on that date. (Ex. A.) Had Defendant completed her Opposition within the time required, the MSJ would have been fully briefed 70 days prior to the assigned hearing date (and 42 days prior to January 8, the minimum period required under the Court's Standing Order). Notwithstanding Defendant's dilatory conduct, the MSJ was fully briefed 42 days before the February 5 hearing date as required.

Against that backdrop, there is plainly no unilateral action, much less impropriety, on Plaintiff's part.

In any event, Defendant's bald assertion that Plaintiff's purported "impropriety was discovered only after Defendant had already filed her Opposition" cannot be taken seriously: even if there *were* impropriety (which there is not), the fact that Defendant did not "discover" it until after her Opposition was filed is a situation entirely of her own making.

Defendant has been on notice of the hearing date since Plaintiff filed her MSJ on November 26. Indeed, Defendant expressly addressed that hearing date (and the broader schedule) *in her Opposition*. (Dkt 149.) Yet, by Defendant's own account, she did not contact the CRD until December 30 (34 days after the MSJ was filed, 20 days after her Opposition was filed, and 13 days after Plaintiff's Reply was filed). (Richardson Decl. ¶¶38-40 and Ex D thereto.) Defendant provides no explanation at all for that significant delay. Instead, she seeks to gloss over it by rolling out her regular refrain that she is a pro se litigant (even though that assertion should be viewed with skepticism, as previously related to the Court[3]). It is also telling that, despite her apparent confusion, she did not seek to clarify the position with Plaintiff's counsel at any point prior to making enquiries with the CRD.

/ / /

/ / /

---

[3] It also bears note that the Court's Standing Order expressly provides that "Parties who represent themselves in civil litigation (i.e., appear pro se), should be aware that the Court holds these parties to the same standards of conduct to which it holds attorneys."

Defendant's argument should be seen for what it is: a transparent afterthought, advanced solely to manufacture a procedural objection where none existed—or, even if one did, had long since been waived. It therefore warrants no consideration by the Court.

## V. DEFENDANT'S NARRATIVE IS FALSE AND DOES NOT SUPPORT ANY CLAIM OF PREJUDICE

Defendant's claims of prejudice are entirely manufactured. She never intended to file a motion for summary judgment, never identified any basis on which she could have done so, and raised this supposed "deprivation" only after the relevant deadlines had passed. Her mediation argument is equally hollow: nothing about the February 5 hearing date affects mediation, trial preparation, or the case schedule in any respect. And her deposition narrative—already rejected by the Court—is a textbook example of self-inflicted delay, followed by an attempt to recast that delay as prejudice. The record shows no disadvantage to Defendant, only strategic gamesmanship (Defendant is the only person who failed to appear for a properly noticed deposition), and provides no basis for denying Plaintiff's motion or granting Defendant any relief.

### A. Defendant's claim that she was deprived of the opportunity to file her own motion for summary judgment is not credible

Defendant's assertion that she was somehow deprived of the opportunity to file her own motion for summary judgment is false and unsupported by the record.

At no point during discovery or motion practice did Defendant ever suggest—let alone articulate—any intention to move for summary judgment. The first time Defendant raised this purported grievance was in her Opposition to Plaintiff's MSJ, filed late and after the relevant deadlines had passed. This after-the-fact contention is a transparent attempt to manufacture prejudice where none exists.

Even then, Defendant conspicuously failed to identify a single viable ground upon which she *could* have sought summary judgment. She did not (and still has not) articulated any undisputed material facts, legal theory, or evidentiary basis that would support such a motion. She cannot do so, because none exist. Defendant's vague and conclusory references to a lost "opportunity" are entirely hollow and entitled to no weight.

Furthermore, and in any event, Defendant's argument collapses under minimal scrutiny of the procedural history. To the extent Defendant suggests that discovery timing impaired her ability to move for summary judgment, that contention is directly contradicted by the facts. Deposition transcripts were made available to both parties on identical terms and on the same timeline. Defendant was not disadvantaged in any respect. And as explained below, any delays in completing depositions were caused *by Defendant herself*. Indeed, Plaintiff proactively sought a modest extension of the discovery schedule precisely to address these issues and to ensure that *both parties* would have ample opportunity to evaluate the record before dispositive motions were due. *Defendant expressly opposed that request*. Having actively sought to prevent amendments to the schedule, Defendant cannot now complain that the schedule *that she demanded* somehow prejudices her.

In short, Defendant's claim of deprivation is not only unsupported—it is self-inflicted, logically incoherent, and contradicted by her own litigation conduct. It provides no basis to deny Plaintiff's MSJ or to afford Defendant any relief whatsoever. Courts routinely reject this type of gamesmanship, and Defendant's attempt to do so here should be no exception.

**B.  Defendant's claim of prejudice to the mediation is incoherent and unsupported**

Defendant asserts that the February 5 hearing date the Court reserved somehow "prejudices" mediation scheduled for January 20, 2026. That claim is ill-explained and, in any event, incorrect.

*First*, Defendant cites no rule, scheduling order, or case law suggesting that mediation must occur only after dispositive motions are resolved. To the contrary, mediation frequently occurs while dispositive motions are pending or even before they are filed. Far from causing prejudice, the existence of such motions often clarifies the parties' positions and facilitates meaningful settlement discussions because, at that stage, both sides face concrete litigation risk.

*Second*, hearing the MSJ on the February 5 date the Court reserved will not affect any other case deadlines or the trial date. The MSJ has been fully briefed. Proceeding with the February 5 hearing date therefore has no impact on Defendant's preparation for mediation, trial, nor any other aspect of the case schedule.

*Third*, Defendant's assertion that she is uniquely prejudiced because she is proceeding pro se and lacks access to private mediation resources is nonsensical and irrelevant. The scheduling of a

summary judgment hearing does not deprive Defendant of any mediation opportunity ordered by the Court, nor does it alter the mediation process in any respect.

Of course, if the Court has any concern about the hearing date relative to the mediation and any prejudice that it might cause to Defendant, then it can address that concern by deferring the mediation until after it renders its decision on Plaintiff's MSJ—a position Defendant must necessarily accept given her purported concerns.

Beyond mediation, Defendant identifies no concrete prejudice resulting from the February 5 hearing date. At most, she asserts some vague and unsupported impediment to her preparation for trial.

Taken at face value, that position is difficult to credit: trial is not scheduled until April 20, 2026, and the first round of trial filings is not due until March 5, 2026. There is ample time for her to prepare. It also ignores the fact that Plaintiff's MSJ may significantly narrow any issues to be tried, thereby limiting the preparation required. Furthermore, if granted, Plaintiff's MSJ would likely dispose of the case in its entirety;[4] the only alternative on Defendant's motion is to defer *all issues* to trial—a plainly inefficient use of judicial resources and both parties' resources, and a significant waste of the prospective jurors' valuable time.

The real reason for this *ex parte* application is evident from the record. Plaintiff's MSJ demonstrates that Defendant lacks any evidence to support her counterclaims. That substantive reality, not any procedural concern, is what has prompted Defendant's filing.

### C. Plaintiff properly noticed Defendant's deposition; Defendant refused to appear

Defendant's repeated complaints regarding depositions do not present a new argument. Defendant has raised this same complaint repeatedly for months. The Court has already heard it and determined it. (Dkt 122.) It remains meritless and can be addressed very briefly:

(a) On September 6, 2024, Plaintiff properly noticed Defendant's deposition for October 9, 2024. (Dkt 120-3.) The same day, Defendant noticed Plaintiff's deposition for October 16, 2024. A week later, Defendant complained that Los Angeles was inconvenient for her given she lives in Northern California. (Dkt 99-7.) Plaintiff—who resides in London—promptly advised she was

---

[4] As previously noted, Plaintiff has already resolved her claims against the other defendants and does not intend to proceed solely against Richardson if the counterclaims are dismissed.

unavailable on October 16, proposed rescheduling both depositions, and offered to relocate Defendant's deposition to Northern California to avoid the need for her to travel to Los Angeles. By agreement, neither deposition proceeded.

(b) On August 23, 2025, Plaintiff again noticed Defendant's deposition, this time for September 17, 2025, in San Francisco, in accordance with Defendant's stated preferences. Five days later, Defendant wrote insisting she would be deposed only after Plaintiff and demanding a court-ordered stipulation requiring Plaintiff's deposition within 30 days. (Dkt 120-5 at 5.) Plaintiff agreed to be deposed within 30 days. Despite that agreement, on the eve of Defendant's deposition—after all arrangements were made and Plaintiff's counsel had traveled to San Francisco—Defendant refused to appear unless Plaintiff was deposed first. Despite having had notice of the deposition for three weeks, Defendant also complained that San Francisco—the location *she* requested and which was only two hours from her home in Salinas—was somehow inconvenient, unreasonable, and intimidatory. Despite having previously complained that *Los Angeles* was inconvenient, Plaintiff, she asserted, should not have noticed the deposition "outside the jurisdiction of this matter". (Dkt 120-5 at 4.)

(c) Defendant's last-minute refusal to appear for her properly noticed deposition forced Plaintiff to file her motion to compel (Dkt 96) and the ensuing scheduling compression. The eventual October 28 (Defendant) and November 7 (Plaintiff) deposition dates were agreed to by Defendant (Defendant herself declined to appear before October 28, 2025).

Bluntly, Defendant cannot manufacture delay and then claim prejudice from it.

## VI. CONCLUSION

Defendant's *ex parte* application is procedurally improper, factually inaccurate, and unsupported by law. It is a thinly veiled attempt to secure an unauthorized sur-reply and to avoid an adverse ruling on the merits.

Plaintiff respectfully requests that the Court deny the *ex parte* application in its entirety and permit the Plaintiff's Motion for Partial Summary Judgment to proceed as scheduled or as otherwise directed by the Court.

/ / /

/ / /

| | | |
|---|---|---|
| Dated: January 12, 2025 | | **MCDERMOTT WILL & SCHULTE LLP** |
| | By: | */s/ Julian L André* |
| | | JULIAN L. ANDRÉ |
| | | TODD HARRISON |
| | | JOSEPH B. EVANS |
| | | |
| | | Attorneys for Plaintiff |
| | | TAYLOR THOMSON |

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, counsel of record for Plaintiff Taylor Thomson, certifies that this brief contains 4,459 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 12, 2025         By:     */s/ Julian L André*

# PROOF OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in Los Angeles, California. My business address is McDermott Will & Schulte, LLP, 2049 Century Park East, Suite 3200, Los Angeles, CA 90067. I am over the age of eighteen years and not a party to this action.

On January 12, 2026, I caused to be served copies of the following documents:

**PLAINTIFF TAYLOR THOMSON'S OPPOSITION TO DEFENDANT'S EX PARTE MOTION TO STRIKE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

on the following party via email:

Ashley Richardson                                    *Defendant in Pro Per*
25399 Markham Lane
Salinas, CA 93908
ashrichardson@mac.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 12, 2026, in Los Angeles, California.

Diksha Vadan