JULIAN L. ANDRÉ (251120)
JAndre@mwe.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone:    +1 310 277 4110
Facsimile:     +1 310 277 4730

JOSEPH B. EVANS (appearing *pro hac vice*)
jbevans@mwe.com
TODD HARRISON (appearing *pro hac vice*)
tdharrison@mwe.com
**MCDERMOTT WILL & SCHULTE LLP**
One Vanderbilt Ave
New York, NY 10017
Telephone: (212) 547-5767
Facsimile: (212) 547-5444

Attorneys for Plaintiff
TAYLOR THOMSON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR THOMSON, | Case No.:  2:23-cv-04669-MEMF-MAR |
| Plaintiff, | **PLAINTIFF TAYLOR THOMSON'S OBJECTIONS TO DEFENDANT ASHLEY RICHARDSON'S PROFFERED TRIAL WITNESSES** |
| v. | |
| PERSISTENCE TECHNOLOGIES BVI PTE LTD., TUSHAR AGGARWAL, ASHLEY RICHARDSON, | FPTC Date: April 14, 2026 |
| Defendants. | FPTC Time: 10:00 a.m. |
| | Trial Date: May 4, 2026 |
| | Trial Time: 9:00 a.m. |

1

Plaintiff Taylor Thomson ("Thomson") hereby respectfully submits her objections to Defendant Ashley Richardson's ("Richardson") (together, the "Parties") witnesses on the Joint Witness List pursuant to this Court's Order. Dkt. No. 214 at 2.

*First*, Thomson maintains the objections raised in her April 4, 2026, *ex parte* application regarding Richardson's failure in proffering her witnesses to comply with this Court's Order regarding trial time limits. This Court made clear in its Order that Richardson's original 80.5 hours of estimated witness examination time, and the corresponding extension of trial time, was unreasonable. Dkt. No. 213 at 5. The Court then imposed a 12-hour limit per side for witness examination. Thomson has since reduced her estimates to 5.5 hours for the three witnesses Thomson will call, 2.25 hours for the four witnesses Thomson may call only if the need arises, and 3.5 hours for examination of Richardson as an adverse witness[1], for a total of 11.25 hours. *See* Dkt. No. 223 at 3-5. In contrast, in response to the Court's Order, Richardson has **increased** her prior time estimates. Richardson has now estimated 57 hours for the witnesses she will call plus an additional 29.5 hours for the witnesses she may call, for a total of 86.5 hours.[2] See Dkt. No. 223 at 3-12. If Richardson is allowed to exceed the Court's time limits and call those witnesses, Thomson would need a substantial amount of additional time for cross-examination.[3] To the extent Richardson seeks an extension of the time limits, Thomson objects to such request. In the event the Court does extend the time limits for Richardson, Thomson requests that any time extensions be allocated equally to both parties.

---

[1] Thomson reserves the right to call Richardson as an adverse witness in her case-in-chief.

[2] Thomson's counsel repeatedly told Richardson that she was exceeding the time limits set by the Court to provide her an opportunity to modify her examination estimates. Richardson refused to do so.

[3] In the parties' Joint Witness List, Thomson included out of an abundance of caution estimated cross-examination time for each of Richardson's witness even though Thomson does not believe such witnesses should be permitted to testify or testify for the length of time Richardson proposes.

*Second,* Thomson incorporates her arguments raised in her Motion in Limine No. 3 (exclusion of undisclosed and unproduced evidence), Motion in Limine No. 4 (exclusion of hearsay), and Motion in Limine No. 5 (exclusion of 404(b) propensity evidence) (together, "MILs 3-5"). This Court deferred ruling on Thomson's MILs 3-5 due to Richardson's lack of specificity regarding her anticipated witnesses and trial exhibits. Dkt. No. 213 at 5; Dkt. No. 217 at 16:18-17:25. Now that Richardson has finally proffered her specific trial witnesses and trial exhibits, Thomson respectfully requests that this Court revisit its rulings on Thomson's MILs 3-5 as it relates to Richardson's witnesses identified below. Thomson also requests that the Court order Richardson to specify each of the other acts evidence that she intends to introduce at trial to the Court and to Thomson so that both may evaluate that proposed testimony and so that Thomson may make proper objections. Thomson is unable to properly argue for exclusion of such evidence without knowing what the proposed evidence is, and Richardson's tactic of hiding the ball and relying on trial by ambush should not be permitted to continue.

Incorporating the above arguments and objections, Thomson objects to the following specific witnesses proffered by Richardson:

**<u>Yasmeen Saleh</u> (Defendant's estimated examination time: 2 hours)**

"Will testify regarding Plaintiff's conduct toward employees and accusations made by Plaintiff against individuals in her household. Unique as a former nanny with firsthand knowledge of Plaintiff's behavior." Dkt. No. 223 at 9.

Yasmeen Saleh ("Saleh") is a former nanny whom Thomson terminated in 2017, nearly ten years ago, for demonstrated theft of Thomson's property, as well as other fraudulent acts and misconduct. Richardson vaguely alleges that Saleh will "testify regarding Plaintiff's conduct toward employees" and asserts that Saleh is unique "as a former nanny with firsthand knowledge of Plaintiff's behavior." Dkt. No. 223 at 9. As noted in Thomson's MIL No. 5, this is precisely the type of unfairly prejudicial propensity evidence prohibited under Rule 404(b), and it should be excluded on that

basis alone because Richardson has failed to support inclusion based on any exception to Rule 404(b). Instead, Richardson only argues vaguely that inclusion of this testimony at trial is proper because it is somehow relevant to "context, state of mind, and relationship evidence." Dkt. 196 at 4. Not only are these improper bases for including 404(b) evidence, this pretextual justification is belied by Richardson's admission that such evidence is relevant to show a "recurring pattern of blaming and defaming others." *Id.* at 5. This is quintessential propensity evidence.

Any probative value of this propensity evidence is substantially outweighed by a risk of unfair prejudice to Thomson, and misleading or confusing the jury. As noted, Saleh was terminated for theft and other misconduct nearly a decade ago, so it is undisputed that Saleh has no personal knowledge of any of the events at issue in this litigation. Saleh did not witness Richardson's management of Thomson's cryptocurrency, does not know how Thomson treated Richardson during the relevant period, and has no knowledge regarding the fallout between Thomson and Richardson due to Richardson's fraud and misappropriation of Thomson's assets. Instead, Saleh can only purport to have personal knowledge of unrelated events that occurred over half a decade prior to the events that will be at issue at trial. Saleh's anticipated testimony about Thomson's alleged bad conduct, remote in time from the events giving rise to this litigation, is clearly being offered to allow Richardson a basis to argue, untruthfully, that Thomson had a propensity to defame and treat others poorly a decade ago, so Thomson must have defamed and treated Richardson poorly now. This is unfairly prejudicial to Thomson and should be precluded under Rule 403 on that basis alone.

Saleh's anticipated testimony is also excludable under Rule 403 because it will mislead and confuse the jury to Thomson's detriment, and it will materially extend the time needed for trial. Saleh's apparent testimony will be untruthful,, and it will require Thomson to marshal rebuttal and impeachment evidence—both in the form of witnesses and documents—to expose the false nature of the testimony. To be clear, Saleh did in fact steal from Thomson, and was subsequently fired for that improper behavior.

Therefore, if she is allowed, Thomson must be allowed to call witnesses and introduce evidence necessary to directly rebut Saleh's decade old allegations. While Saleh's theft and misconduct pales in comparison to Richardson's massive fraud and misappropriation, it is still something Thomson will be forced to prove at trial if Richardson is allowed to proffer Saleh as an improper character and propensity witness. Not only will this be unfairly prejudicial to Thomson because it will force Thomson to spend precious trial time disproving false testimony that is focused on unrelated events, but it will waste the jury's and this Court's time, mislead the jury, and confuse the issues. Thomson, therefore, objects to Saleh's testimony.

### Julia Gordon (Defendant's estimated examination time: 2 hours)

"Will testify regarding Plaintiff's conduct toward employees and others, including Richardson, and events surrounding the dispute between the parties. Unique as Plaintiff's former assistant who directly observed Plaintiff's behavior and communications." Dkt. No. 223 at 7-8. Richardson's "description" of Gordon' proposed testimony is impossibly vague, and again, Thomson requests that the Court order Richardson to specifically describe the other acts testimony that Gordon would allegedly give, in order that the Court may sufficiently evaluate it, and Thomson may properly object to it.

Julia Gordon ("Gordon") is a former assistant for Thomson who stopped working for Thomson at the end of December 2021. Richardson filed her counterclaims for intentional infliction of emotional distress and defamation on December 22, 2023. The statute of limitations for intentional infliction of emotion distress in California is two years, while the statute of limitations for defamation is one year. Accordingly, any alleged outrageous conduct that occurred before December 22, 2021, and any alleged defamatory statements that were published prior to December 22, 2022, are time-barred and cannot support Richardson's counterclaims. Thomson objects to the introduction of Gordon's testimony at trial because she lacks personal knowledge of any alleged events that give rise to Richardson's counterclaims—that is, Gordon can only purport to have

limited personal knowledge of events that took place prior to December 2021. Moreover, Gordon has no personal knowledge of Richardson's fraud on Thomson, since the fraud was not discovered until months after Gordon voluntarily left her employment with Thomson. Gordon's testimony would thus be of little or no probative value.

Thomson further objects on the basis that Gordon's anticipated testimony concerning Thomson's other acts related to her employees constitutes unfairly prejudicial propensity testimony. Accordingly, what little probative value Gordon's testimony might have will be substantially outweighed by a palpable risk of unfair prejudice, misleading the jury, and confusing the issues. It should accordingly be excluded.

### Michelle Fleury (Defendant's estimated examination time: 10 hours)

"Will testify regarding numerous conversations between Plaintiff and Richardson, Plaintiff's conduct toward Richardson, and the impact of those events on Richardson's mental and emotional condition. Unique as Richardson's long-term partner who directly observed many of the interactions at issue." Dkt. No. 223 at 7.

Michelle Fleury ("Fleury") was in a long-term relationship with Richardson until 2024. Thomson objects to the testimony of Fleury, as Richardson clearly intends to improperly use Fleury to enter into the trial Richardson's own self-serving statements. Thomson objects to the extent Fleury's testimony is based on hearsay statements made by Richardson rather than Fleury's personal knowledge, or to the extent it amounts to improper legal conclusions. While Richardson purports to proffer Fleury to provide testimony based on her personal knowledge, Fleury's prior testimony offered in this litigation makes clear that her testimony will consist largely of improper hearsay. In her declaration submitted in support of Richardson's opposition to Thomson's Motion for Summary Adjudication, for example, Fleury stated at the outset that she "observed the dynamic between" Thomson and Richardson "closely," but she supports this assertion by stating that "Ashley and I discussed nearly everything happening in our lives." Dkt.

No. 151, ¶ 3. Indeed, Fleury's declaration is replete with testimony based on what Ashley or someone else told her. *See id.*, ¶¶ 5,7-8, 19, 21, 23-26, 28, 31-32,

In yet another example that Fleury's testimony has been prepared for improper purposes, in her declaration Fleury also testified that Ashley did not "hold herself out as a fiduciary or assume the type of professional control or discretion over Taylor's finances that a fiduciary relationship requires." *Id.*, ¶ 32. Whether or not a relationship constitutes a fiduciary relationship, and what actions are required in a fiduciary relationship are issues of law beyond the purview of any witness in this case. Even if this type of testimony did not constitute improper legal opinion, it would qualify as improper expert opinion. Richardson has never disclosed Fleury as an expert on fiduciary process or standard of care in this case, and Fleury is unqualified to render an opinion on fiduciary process or standards. Thomson thus also objects to Fleury's anticipated testimony to the extent it is based on improper legal conclusions regarding Richardson's status as a fiduciary, or to the extent it offers unqualified expert opinion on fiduciary process or standard of care.

Any testimony from Fleury should be confined to the limited facts of which Fleury has direct personal knowledge. Such testimony would not under any circumstance require 10 hours of direct examination Richardson has estimated.

**Hazel Williams Carter (Defendant's estimated examination time: 1 hour)**

"Will testify regarding Plaintiff's conduct toward Richardson prior to and during the relevant period and observations of Plaintiff's treatment of Richardson. Unique as an advisor who had direct knowledge of the relationship dynamics before the cryptocurrency transactions occurred." Dkt. No. 223 at 7.

Hazel Williams Carter ("Carter") is an alternative healthcare consultant who has no personal knowledge as to the events giving rise to this litigation. Thomson objects to the testimony of Carter to the extent Richardson attempts to elicit expert testimony related to Richardson's psychological condition either during the relevant events giving rise to this litigation or following the relevant period. Richardson has not disclosed

Carter as an expert witness in this case, nor has Richardson disclosed an expert report authored by Carter.

Thomson also objects to Carter's anticipated testimony on the grounds that Carter has no personal knowledge of the events giving rise to this litigation. Richardson has laid no foundation, and indeed will be unable to lay any foundation at trial, for Carter's personal knowledge of Richardson's management of Thomson's cryptocurrency, Thomson's treatment of Richardson, or the fallout from Richardson's fraud and misappropriation of Thomson's assets. As such, it is clear that Richardson only intends to have Carter testify as to self-serving statements that Richardson allegedly told Carter. during their treatment sessions. This is inadmissible hearsay without an exception and should be excluded from trial.

### Pamela Miller (Defendant's estimated examination time: 2 hours)

"Will testify regarding Plaintiff's conduct toward employees and others, including allegations of surveillance, accusations, and emotional distress caused by Plaintiff's actions. Unique as a former household employee who experienced and witnessed the conduct at issue." Dkt. No. 223 at 8. Again, Richardson's description of the alleged testimony is impossibly vague, and Thomson requests that the Court direct Richardson to state the specific other acts evidence that Richardson intends to elicit, so that the Court may evaluate the propriety of that testimony, and Thomson may properly object.

Pamela Miller ("Miller") was a nanny to Thomson's daughter more than 20 years ago, in the early 2000s. Miller was apparently a witness in the custody dispute involving Thomson's daughter. The judge overseeing that case apparently warned Miller that she might be subject to sanctions for failing to disclose money paid to her by Thomson's ex-partner for Miller to appear as a witness on his behalf. Thomson objects to the introduction of Miller's testimony at trial because her testimony apparently relates to alleged other acts that took place more than two decades ago. She has no personal knowledge of any of the events giving rise to this litigation. Richardson thus seeks to

8

elicit pure (untrue) propensity testimony regarding alleged other bad acts, such as Thomson's allegedly poor treatment of former staff over two decades ago. Richardson also apparently seeks to elicit testimony from Miller regarding Thomson's previous attorney's brief employment of private investigator Anthony Pelicano,, even though Thomson's lawyer's alleged hiring of Pellicano had nothing to do with those acts.

In other words, not only does Richardson seek to introduce more than twenty-year-old other-acts propensity evidence, which is barred by Rule 404(b), but she also seeks to make Thomson appear "guilty by association" based on her brief alleged engagement of Pelicano's services, for which Thomson was never accused of wrongdoing. What is clear, however, is that such testimony would unfairly impugn Thomson's character and image in the eyes of the jury, and it would confuse the matters that are at issue in this trial. Accordingly, any probative value of Miller's testimony regarding more than twenty-year-old other acts would be substantially outweighed by the risk of unfair prejudice to Thomson. Miller's testimony should be excluded on that basis alone.

Finally, similar to the issues of creating unnecessary mini-trials that will result from Saleh's testimony, introduction of Miller's testimony will require Thomson to adduce evidence related to Miller's bias against Thomson, including evidence related to her sanctionable and arguably perjurious testimony given against Thomson in the custody proceedings more than twenty year ago, as well as evidence of other false statements to show her dishonesty. This mini-trial, which will only inure to the benefit of Richardson, will confuse the jury, will unfairly and improperly impugn Thomson's character and serve as improper (and untrue) propensity evidence, and should be avoided altogether by excluding Miller's testimony.

### **Mike Voss** (Defendant's estimated examination time: 2 hours)

"Will testify regarding Plaintiff's early involvement in cryptocurrency, her investment behavior, and prior accusations made by Plaintiff concerning financial

losses. Unique as Plaintiff's former head of security who introduced her to Bitcoin and later experienced similar accusation." Dkt. No. 223 at 8.

Mike Voss ("Voss") is a former security professional for Thomson who stopped working for Thomson in late 2019. Richardson apparently seeks to have Voss testify as to some alleged other acts to establish Thomson's propensity to accuse those close to her of theft or fraud. Thomson objects to the introduction of Voss's testimony because he has no personal knowledge of the Persistence XPRT transaction, or Richardson's unauthorized trading, which is at issue in this litigation. The probative value of Voss's testimony regarding unspecified alleged prior accusations made by Thomson concerning financial losses is substantially outweighed by the risk of unfair prejudice because any alleged accusations made against others are completely unrelated to Thomson's accusations against Richardson, which are based on a demonstrated record of Richardson's misrepresentations, concealment, and misappropriation of Thomson's assets. Moreover, testimony regarding other alleged accusations will necessitate the introduction of rebuttal evidence and testimony to address the propriety of any alleged accusations. Richardson's attempts to introduce Voss's other-acts propensity testimony, combined with similar testimony from several other witnesses, appears to be part and parcel of Richardson's attempt to confuse and mislead the jury by forcing Thomson to engage in a series of sprawling mini-trials concerning unrelated events, most of which occurred years ago, including nearly two decades ago—and all of which occurred well before the events that gave rise to this litigation. This testimony should thus be excluded under Rule 403.

### **Kevin Fitzgerald (Defendant's estimated examination time: 2.5 hours)**

"Will testify regarding communications from Plaintiff concerning Richardson and the cryptocurrency dispute. Unique as a third party who received Plaintiff's statements regarding Richardson." Dkt. No. 223 at 10.

Richardson is proffering Kevin Fitzgerald ("Fitzgerald") to elicit testimony concerning alleged defamatory statements Thomson made about Richardson, yet

Richardson has no reasonable basis to believe Thomson ever made defamatory statements to Fitzgerald about Richardson. Indeed, Richardson admitted under oath in her October 28, 2025, deposition that Fitzgerald has never told her that Thomson made any defamatory statements to him about Richardson. Dkt. No. 169-2 at 41:19-21 ("Q. Has Kevin Fitzgerald told you that Taylor Thomson made defamatory statements about you to him?  A. No."). Thomson thus objects to the introduction of Fitzgerald's testimony on the basis that it is not relevant and that Fitzgerald has no personal knowledge of the events at issue in this litigation.

### **Susan Lerable (Defendant's estimated examination time: 1.5 hours)**

"Will testify regarding investigative actions taken at her residence concerning Richardson and the impact of those actions on Richardson and her family. Unique as Richardson's mother and a direct subject of those investigative activities, which caused direct harm." Dkt. No. 223 at 10.

Thomson objects to the testimony of Susan Lerable on three independent grounds. First, Susan Lerable has no personal knowledge of any of the claims in this litigation – not the Persistence XPRT transaction, Thomson's relationship with Richardson, Richardson's management and unauthorized trading of Thomson's crypto, Richardson's fraud and other misconduct, or the alleged defamatory statements. Second, Susan Lerable's proffered testimony will necessarily require yet another mini-trial regarding what is at most a collateral issue because Susan Lerable's allegations regarding "investigative actions" are false. Third, the substance of Susan Lerable's testimony stems from alleged events that occurred in August 2025, yet Richardson has failed to disclose or produce any documentary evidence regarding the alleged incident, either prior to the October 2025 discovery cutoff, or to this day.

In short, Susan Lerable's testimony should not be permitted because it will not address any of the central issues in this case, it will mislead and confuse the jury by requiring an unnecessary mini-trial to rebut the false allegations contained in the testimony, and it reflects yet another attempt by Richardson at improper gamesmanship

in this litigation. To the extent this Court permits the testimony of Susan Lerable, Thomson requests that this Court require Richardson to immediately produce all documentary evidence relating to the events of August 2025 and permit Thomson to depose Lerable in advance of her testimony so that Thomson can properly test the specific false allegations contained therein before trial.

**Lindsay Lerable (Defendant's estimated examination time: 1.5 hours)**

"Will testify regarding investigative actions directed at Richardson's family and related events. Unique as Richardson's step-sister and another individual directly affected by those activities, and subsequently filed a police report asserting harassment from Guidepost Solutions." Dkt. No. 223 at 11.

Thomson objects to the testimony of Lindsay Lerable on three independent grounds. First, Lindsay Lerable has no personal knowledge of the Persistence XPRT transaction, Thomson's relationship with Richardson, Richardson's management and unauthorized trading of Thomson's crypto, Richardson's fraud and other misconduct, or the alleged defamatory statements. second, Lindsay Lerable's proffered testimony will necessarily require yet another mini-trial regarding what is at most a collateral issue because Lindsay Lerable's allegations regarding "investigative actions" are false. Third, the substance of Lindsay Lerable's testimony stems from alleged events that occurred in August 2025, yet Richardson failed to disclose or produce any evidence—including an alleged police report—regarding the alleged incident prior to the October 2025 discovery cutoff.

In short, Lindsay Lerable's testimony should not be permitted because it will not address any of the central issues in this case, it will mislead and confuse the jury by requiring an unnecessary mini-trial to rebut the false allegations contained in the testimony, and it reflects yet another attempt by Richardson at improper gamesmanship in this litigation. To the extent this Court permits the testimony of Lindsay Lerable, Thomson requests that this Court require Richardson to immediately produce all documentary evidence relating to the events of August 2025 and permit Thomson to

depose Lindsay Lerable in advance of her testimony so that Thomson can properly test the specific false allegations contained therein.

### Chiyo Maniwa (Defendant's estimated examination time: 2.5 hours)

"Will testify regarding Richardson's psychological condition, emotional distress, and treatment history related to the events at issue. Unique as Richardson's long-time treating therapist." Dkt. No. 223 at 11.

Thomson objects to the introduction at trial of Chiyo Maniwa's ("Maniwa") testimony in its entirety for two reasons. First, Thomson objects to Maniwa's expert testimony as a treating physician because Richardson has failed to make the requisite disclosures of "'the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705' and 'a summary of the facts and opinions to which the witness is expected to testify.'" *PerkinElmer Health Scis., Inc. v. SCR Living LLC*, No. 5:20-CV-02083-JWH-KK, 2022 WL 3130237, at *10 (C.D. Cal. June 22, 2022). Richardson was required to affirmatively provide the above information regarding Maniwa's anticipated testimony, yet she failed to do so. Thomson even requested this information in her interrogatories served on Richardson in September 2024. Dkt. No. 168-3 at 20. Richardson responded by refusing to disclose any of this relevant information, including relevant medical records of treatment. *Id.* at 24. Under these circumstances, Richardson's failure to make the required expert disclosures for Maniwa cannot be shown to be substantially justified or harmless. Accordingly, the testimony should be excluded in its entirety. *See PerkinElmer Health Scis., Inc. v. SCR Living LLC*, No. 5:20-CV-02083-JWH-KK, 2022 WL 3130237, at *10 (C.D. Cal. June 22, 2022). Indeed, allowing Maniwa to testify after Richardson refused to provide the required expert disclosures and produce relevant medical records would be highly prejudicial and fundamentally unfair.

Richardson's failure to disclose Maniwa's expert report precludes her from eliciting expert testimony from Maniwa absent a showing of that the failure was substantially justified or harmless. *Id.* Richardson has not, and indeed cannot, make

such a showing, so any expert opinion testimony proffered by Maniwa that is based on opinions formed outside the normal course of treatment should be barred from this trial.

Finally, in the event this Court permits Maniwa to testify as a treating expert, Thomson respectfully requests that this Court order Richardson to immediately produce all medical records related to her treatment under Maniwa. Thomson also respectfully requests additional time to obtain a rebuttal expert witness.

**Nicholas Gravante (Defendant's estimated examination time: 3 hours)**

"Mr. Gravante's testimony is unique because he was a direct participant in the communications at issue and has firsthand knowledge of their full context, meaning, and sequence. No other witness can provide the same direct account of those exchanges or the context necessary to avoid a misleading or distorted presentation." Dkt. No. 223 at 11.

Thomson objects to the anticipated testimony of Nicholas Gravante ("Gravante") for two primary reasons. First, Richardson never disclosed Gravante as a witness until March 30, 2026, a mere two days prior to the initial Final Pretrial Conference in this case, and only three weeks prior to the initial date set for trial. This failure to disclose is not harmless because fact discovery has closed in this case and it is unclear to what the universe of Gravante's testimony is, nor is it substantially justified.[4] Second, Gravante has been acting as counsel for Richardson in this litigation, which is why Richardson has refused to produce any communications between her and Gravante on the basis of attorney-client privilege. Introduction of Gravante's testimony at trial will amount to Richardson using that privilege as sword and shield and would be unfairly prejudicial to Thomson.

---

[4] Richardson may argue that Thomson's inclusion on the exhibit list of certain text messages between Gravante and Thomson's counsel necessitates Gravante's testimony. However, Thomson included communications with Gravante on the exhibit list out of an abundance of caution to rebut any claim by Richardson that a certain Wall Street Journal article, which Richardson and Gravante orchestrated, somehow contributed to Richardson's claim for intentional infliction of emotional distress.

14

In the event this Court permits the introduction of Gravante's testimony at trial, this Court should also permit Thomson to seek production of communications between Richardson and Gravante, and Thomson should be permitted to take a deposition of Gravante prior to his testimony at trial.

Date: April 13, 2026                          By: /s/ Todd Harrison
                                              Todd Harrison
                                              Attorney for Plaintiff
                                              Taylor Thomson

### Certificate of Compliance Pursuant to L.R. 11-6.1

Pursuant to Local Rule 11-6.2, The undersigned, counsel of record for Taylor Thomson, certifies that this brief contains 4,198 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 13, 2026            **By:**   */s/ Todd Harrison*
                                           TODD HARRISON

## **PROOF OF SERVICE**

I am a citizen of the United States and resident of the State of California. I am employed in Los Angeles, California. My business address is McDermott Will & Schulte, LLP, 2049 Century Park East, Suite 3200, Los Angeles, CA 90067. I am over the age of eighteen years and not a party to this action.

On April 13, 2026, I caused to be served copies of the following documents:

**PLAINTIFF TAYLOR THOMSON'S OBJECTIONS TO DEFENDANT ASHLEY RICHARDSON'S PROFFERED TRIAL WITNESSES**

on the following party via email:

Ashley Richardson                    *Defendant in Pro Per*
25399 Markham Lane
Salinas, CA 93908
ashrichardson@mac.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 13, 2026, in Los Angeles, California.

*/s/ Diksha Vadan*
Diksha Vadan

PROOF OF SERVICE
(No. 2:23-cv-04669-MEMF-MAR)